877 A.2d 298 (2005)
379 N.J. Super. 153
Brian GREER, an infant, by his Guardian ad Litem, Jeffrey PETERSON, and Jeffrey Peterson, individually, Plaintiffs-Appellants,
v.
Michael G. NAKLICKI and Glenn Naklicki, and Allstate Insurance Company, Defendants-Third-Party Plaintiffs-Respondents,
v.
Tracy Truch, Third-Party Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Argued February 9, 2005.
Decided July 11, 2005.
*299 Bruce H. Stern, Princeton, argued the cause for appellant Brian Greer (Stark & Stark, attorneys; Mr. Stern, on the brief).
Cindy Nan Vogelman, Secaucus, argued the cause for respondent Allstate Insurance Company (Chasan, Leyner, Bariso & Lamparello, attorneys; Ms. Vogelman, Catherine G. Gingeleskie and Joseph B. O'Toole, Jr. on the brief.).
Michael G. Naklicki and Glenn Naklicki respondents, did not submit a brief.
Tracy Truch respondent, did not submit a brief.
Before Judges NEWMAN, R.B. COLEMAN and HOLSTON, JR.
The opinion of the court was delivered by
COLEMAN, R.B., J.A.D.
On January 4, 2000, plaintiff Brian Greer, a minor, sustained serious physical injuries when the vehicle in which he was a passenger was struck by a vehicle owned and operated by defendant, Michael Naklicki.[1] Michael was insured under an automobile policy issued by intervenor Allstate New Jersey Insurance Company (Allstate) to his father, Glenn Naklicki. Allstate acknowledged coverage of both Michael and Glenn Naklicki under that automobile liability policy for the claims asserted in plaintiff's personal injury complaint and moved for a court order permitting it to deposit voluntarily the full policy limit of $100,000 with the Clerk of the Superior Court on behalf of the Naklickis.
Because plaintiff Greer opposed the motion to deposit the automobile policy limits into court, Allstate moved to intervene in the case and after summary judgment was granted dismissing plaintiff's claims against the father, Glenn Naklicki, Allstate also sought a declaratory judgment that Michael was not covered under the $1,000,000 personal umbrella policy Allstate had issued to Glenn Naklicki. Glenn Naklicki was the only named insured in the personal umbrella policy. Through its *300 attorneys, Allstate notified the parties that it would not cover Michael under the personal umbrella policy, because by its terms, the policy only covered insured persons, defined in the policy as follows:
(a) You, and any other person who is named on the Policy Declarations;
(b) any person related to you by blood, marriage or adoption who is a resident of your household; or
(c) any dependent person in your care, if that person is a resident of your household.
Glenn is the named insured, but Allstate contends Michael is not a resident relative or a resident dependent.
The personal umbrella policy also contains the following relevant provisions pertaining to changes:
Premium Changes
The coverage provided and premium for this policy are based on information Allstate has received from you or other sources. You agree to cooperate with us in determining if this information is correct and complete. You agree that if this information changes or is incorrect or incomplete, we may adjust your coverage or premium accordingly during the policy period or take other appropriate action.
* * *
Duty To Report Policy Changes
Your policy was issued in reliance on the information you provided. Changes may occur to the information you gave us on your application for this policy or to your Required Underlying Insurance policies during the policy period. If so, you must inform us within 30 days of the following:
Changes in:
1. your address or the change of address of any insured person.
2. limits of liability of your Required Underlying Insurance; or
3. types of Required Underlying Insurance.
Michael no longer resided in his father's home at the time of the January 4, 2000, automobile accident. After he graduated from college in January 1998, Michael became employed as an environmental engineer. On June 26, 1999, he entered into a lease agreement, effective for the term July 15, 1999 through July 31, 2000, for an apartment located in East Brunswick. His boat/auto operator's license issued on December 27, 1999, reflected his East Brunswick address and he took additional steps to establish that location as his permanent residence, separate and apart from the residence of his father at Lake Hopatcong.
In their respective depositions, Michael and his father testified that around the time of the accident Michael would stop by his father's Lake Hopatcong residence to visit or to attend family parties but he kept no personal belongings there. His mail was either forwarded or directly addressed to him at his East Brunswick address. Neither Michael nor his father notified Allstate of Michael's change of address.
Finding Michael was not a resident relative, the court granted Allstate's motion for summary judgment declaring no coverage under the personal umbrella policy for Michael. Although the Naklickis did not challenge that determination, plaintiff sought leave to file an interlocutory appeal, which was denied. Thereafter, the underlying tort action was tried on all issues before a jury, which returned a verdict in favor of plaintiff in the amount of $1,600,000. Judgment for plaintiff was entered in the amount of $1,749,507, inclusive of prejudgment interest and costs. Plaintiff then filed this appeal contesting the declaration that Allstate's umbrella policy *301 afforded no coverage for Michael's negligence.
On appeal, plaintiff contends the motion for summary judgment in the declaratory judgment action was premature in that plaintiff should have been granted leave to conduct further discovery to obtain the declaration page of the Allstate personal umbrella policy to determine whether Michael was a named insured. To the same end, plaintiff sought a copy of the underwriting file to determine whether or not the premiums charged by Allstate were calculated on the premise that Michael was a covered person under the policy. Plaintiff also contends the reasonable expectations of the Naklickis should have prevailed over ambiguous policy language to require coverage under the personal umbrella policy.
In the interest of judicial economy, we requested at oral argument that Allstate furnish a copy of the declaration sheets and a copy of the policies for automobile liability and personal umbrella coverage issued to Glenn Naklicki. It complied with that request and provided the declaration sheet for the personal umbrella policy for the premium period from January 20, 1999 to January 20, 2000; Rules 2 (premium determination) and 3 (premium determination) from the personal umbrella policy manual; the auto policy declarations for the policy period July 29, 1999 to January 29, 2000, and the tier rating supplements applicable to the automobile liability policy.
The declaration sheet for the personal umbrella policy confirms that Glenn Naklicki of Lake Hopatcong is the policy holder. It also explicitly states that the premium includes a charge for "3 automobiles" and for "a young driver". In the certification of Diane Frankenfield submitted to authenticate the requested documents, Ms. Frankenfield explains, with reference to the policy, that "a young driver" is defined as an individual "residing in the named insured's household" and "under 21 years of age." Unquestionably, Michael did not fit that definition. He is the oldest of the three Naklicki children at age twenty-five when the accident occurred. The Frankenfield certification also explains that the basic premium includes coverage for "one owned, leased or regularly used automobile" and an additional premium is charged for "each additional owned, leased or regularly used automobile." Thus, the declaration sheet provided at our request discloses, and Allstate does not deny, that the personal umbrella premium includes a charge for the four cars that were in the Naklicki household at the inception of the policy periods for the two policies. One of those cars was the Jeep Cherokee owned by Michael. Accordingly, there is no dispute as to the material facts plaintiff sought to establish through the discovery it had not received before the court made its determination of no coverage under the personal umbrella policy.
Insurance agreements in New Jersey are given particular scrutiny because of the imbalance of positions between the insured and insurance companies and their respective understanding of the terms and conditions of insurance policies. Zacarias v. Allstate Ins. Co., 168 N.J. 590, 594, 775 A.2d 1262 (2001). When there is an ambiguity in the policy language, it will usually be resolved in favor of the insured. Am. Motorists Ins. Co. v. L-C-A Sales Co., 155 N.J. 29, 41, 713 A.2d 1007 (1998). This is true even if a close reading of the policy reveals a contrary meaning. Zacarias, supra, 168 N.J. at 595, 775 A.2d 1262. However, absent an ambiguity, the court should not write a better policy for the insured than the one purchased. Ibid.
"Under certain circumstances, even the plain meaning of policy language may *302 be overcome if it conflicts with the reasonable expectations of the insured." Am. Motorists Ins. Co., supra, 155 N.J. at 41, 713 A.2d 1007. Courts have endeavored to interpret ambiguous insurance contracts to accord with the objectively reasonable expectations of the insured, and have, in exceptional circumstances, even construed contracts to reflect the reasonable expectation of the insured in the face of language of the policy where the literal meaning is plain. Doto v. Russo, 140 N.J. 544, 556, 659 A.2d 1371 (1995). Courts have refused to allow insurance companies to hide behind the language of their policies when the company's actions cause the insured to act or not act based on those actions. Ibid. For example, in Kende Leasing Corp. v. A.I. Credit Corp., 217 N.J.Super. 101, 524 A.2d 1306 (App.Div.), certif. denied, 108 N.J. 664, 532 A.2d 242 (1987), where the insurance company cashed a premium payment after notice of cancellation and retained far beyond the cancellation date premiums paid for coverage, this court ruled the insurance company was estopped from claiming that a policy was cancelled at the time of a loss. Id. at 115-16, 524 A.2d 1306.
We have also used the doctrine in looking to the expectation derived from the declaration sheet and have stated,
[T]he declaration page, the one page of the policy tailored to the particular insured and not merely boilerplate, which must be deemed to define coverage and the insured's expectation of coverage. And we are also convinced that reasonable expectations of coverage raised by the declaration page cannot be contradicted by the policy's boilerplate unless the declaration page itself clearly so warns the insured.
[Lehrhoff v. Aetna Cas. and Sur. Co., 271 N.J.Super. 340, 347, 638 A.2d 889 (App.Div.1994).]
In Lehrhoff, we examined the declaration page in the context of uninsured motorist coverage for an individual who, while a pedestrian, was injured in a traffic accident attributed to an unidentified motorist. We asked whether, looking from the perspective of the insured, the typical policyholder would expect that a person is entitled to all the protections and coverages of the policy. Id. at 348-49, 638 A.2d 889. There, we found that the injured son, listed as a named driver in the declaration sheet, was still a member of his father's household while he was attending college in another state and was entitled to coverage.
The Supreme Court in Zacarias, supra, also discussed the reasonable expectation doctrine in conjunction with the declaration sheet. In that case, the Supreme Court approved this court's decision in Lehrhoff with respect to the importance of the declaration sheet, but the Court distinguished Zacarias, noting that, unlike Lehrhoff, there was no ambiguity, inconsistency, or contradiction between the declaration sheet and the body of the policy. Zacarias, supra, 168 N.J. at 602, 775 A.2d 1262. The Court reviewed the case law on the reasonable expectation doctrine and summarized as follows:
Broadly stated, we discern two rules from the above cases. First, in enforcing an insurance policy, courts will depart from the literal text and interpret it in accordance with the insured's understanding, even when that understanding contradicts the insurer's intent, if the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine print, or requires strenuous study to comprehend. Second, the plain terms of the contract will be enforced if the "entangled and professional interpretation of *303 an insurance underwriter is [not] pitted against that of an average purchaser of insurance" or the provision is not so "confusing that the average policyholder cannot make out the boundaries of coverage."
[Id. at 601, 775 A.2d 1262.]
Under neither of the rules summarized by the Court do we find a basis to conclude that coverage should be provided to the insured under the facts of this case.
The umbrella policy declaration sheet and the umbrella policy do not contain overly technical, confusing, ambiguous or contradicting terms. The first page of the policy provides a clear definition of who is an insured under the policy. The policy also expresses the fair and reasonable premise that "The coverage provided and premium for this policy are based on information Allstate has received from you or other sources." The policy elicits the agreement of the insured, which is implied in any event, to cooperate with the insurer in determining if the information it relies upon is correct and complete. The policy indicates the agreement of the insured that if the information changes or is incorrect or incomplete, the coverage or the premium may be adjusted accordingly during the policy period or other appropriate action may be taken. The policy does purport to impose upon the insured responsibility to notify the insurer of any changes, but that responsibility is neither onerous nor unfair.
Unlike Lehrhoff, the only named person on the declaration sheet is the insured, Glenn Naklicki. Also unlike Lehrhoff the declaration sheet specifically states that it is subject to the terms of the umbrella policy. Nothing in the declaration sheet contradicts or gives an insured an impression that coverage exists despite the plain terms of the policy.
The only suggestion of possible coverage is the recital on the declaration sheet where it is disclosed that an additional premium is charged for three automobiles. There is no listing of the particular automobiles or persons for which the premiums are being charged. What is more important though, is that the statement did not generate any failed expectations in the putative insureds. Neither of the Naklickis can reasonably claim to have been misled. As Michael acknowledges at his deposition, he purchased his Jeep Cherokee in March 1998, soon after he graduated and became employed as an engineer. He stated he was "in the process" of transferring coverage at the time of the accident in January 2000, two years after his graduation and twenty-two months after he purchased the vehicle. Though he did not move to his apartment in East Brunswick until about six months before the date of the accident, Michael never returned to his father's home in Lake Hopatcong after he graduated college in January 1998. According to Glenn, Michael "had been living alone, or with roommates in the Rutgers area." The policy called for the insured to give notice of a change of address within thirty days. We do not find that requirement unreasonable.
Based on the record as supplemented by the submissions on appeal, we are convinced that the personal umbrella policy declaration sheet, read in conjunction with the automobile liability policy, is not ambiguous and, as relates to the undisputed facts in this case, the personal umbrella policy contains no contradictory language or terms that would have created a reasonable expectation that the policy provided coverage for the negligence of Michael as of January 4, 2000, the date of the accident.
Necessarily, the policy is predicated on information provided by the insured *304 and it states that if the information provided by the insured changes or is incomplete, Allstate may adjust the coverage or premium accordingly during the policy period or take other appropriate action. The personal umbrella policy expressly recognizes the obviousthat changes may occur with respect to the information given on an application for the policy or any required underlying insurance policies during the policy period. If or when changes occur, the policy requires the insured to notify Allstate of such changes within thirty days.
Glenn Naklicki testified at his deposition that he was unaware of all the stipulations of the umbrella policy until after the accident. He stated that he believed his son Michael was covered under the umbrella policy because he was named under the automobile insurance policy. Glenn estimated he had the policy for approximately ten years. Allstate did not and does not deny coverage of Michael as an insured under the private auto policy issued to Glenn Naklicki. All of the drivers in Glenn's family, including Michael, are specifically named as insureds on the automobile policy's declaration sheet. Also, Michael's vehicle is expressly listed in the declaration sheet for that policy. Michael testified that even though he purchased his own vehicle, the insurance policy was under his father's name and he was under his father's policy all throughout college. He added that although he was in the process of transferring the policy to his name after he graduated and rented his own apartment, he had not obtained his own policy before the accident.
Michael was not specifically named in the umbrella policy declaration sheet. By undisputed inference, however, his vehicle was among the three additional vehicles for which a premium was charged under the umbrella coverage. Plaintiff's claim of ambiguity, as well as any argument of reasonable expectation on the part of the Naklickis, rests upon the fact that such a premium charge is so disclosed. But there is neither an ambiguity nor a reasonable expectation that equitably supports coverage.
The Naklickis failed to inform the carrier of Michael's relocation and emancipation from his father's household. Glenn Naklicki purported to keep Michael on his insurance policies even though his son had established his own household more than six months before the accident. Under such circumstances, Allstate is not estopped from denying coverage. "Estoppel is an equitable doctrine, founded in the fundamental duty of fair dealing imposed by law." Knorr v. Smeal, 178 N.J. 169, 178, 836 A.2d 794 (2003); Casamasino v. City of Jersey City, 158 N.J. 333, 354, 730 A.2d 287 (1999).
It is well established that a duty of good faith and fair dealing is implicit in every insurance contract. Price v. New Jersey Mfrs. Ins. Co., 182 N.J. 519, 526, 867 A.2d 1181 (2005); Edwards v. Prudential Prop. & Cas., 357 N.J.Super. 196, 203, 814 A.2d 1115 (App.Div.) certif. denied, 176 N.J. 278, 822 A.2d 608 (2003). In Price, the Court stated:
We have declared that every insurance contract contains an implied covenant of good faith and fair dealing. Sears Mortgage Corp. v. Rose, 134 N.J. 326, 347, 634 A.2d 74 (1993); Griggs v. Bertram, 88 N.J. 347, 360-61, 443 A.2d 163 (1982). "The insurance company, as the dominant party, however, has an even greater obligation than the insured to act in good faith. It must not put `technical encumbrances or hidden pitfalls' in the way of unsophisticated customers that would undermine their `reasonable expectations.'" Rose, supra, 134 N.J. at 347, 634 A.2d 74 (quotation omitted). *305 [Price, supra, 182 N.J. at 526, 867 A.2d 1181.]
Though the insurer bears a greater duty, the insured must also act fairly and in good faith.
Allowing all legitimate inferences against Allstate, the judge found no facts or circumstances before him that would create a genuine issue of material fact. He properly held it is the contractual duty of the insured to notify the insurer within a reasonable time of the change in circumstances affecting the policy. The judge also found that the language in the umbrella policy was clear, that the personal umbrella policy only applied to resident relatives in Glenn's household and that Michael's move from the residence was more than temporary. The judge stated he did not believe any further discovery would elucidate the matter. He assumed that Allstate was receiving the premium based on coverage for Michael and, nevertheless, granted summary judgment in favor of Allstate. The enlightenment provided by the supplemental submissions to this court confirm the correctness of the conclusions reached by the motion judge.
Under all the circumstances, we are satisfied the trial court properly entered judgment in favor of Allstate. Allstate must, however, adjust the policy and return any premium attributable to Michael's vehicle.
Affirmed.
NOTES
[1] Brian Greer was fourteen years old at the time of the motor vehicle accident. A tort action was filed on his behalf by his Guardian ad Litem, Jeffrey Peterson, who also sued individually. In this opinion, we use "plaintiff," singular; however, the term should be understood to encompass the claims of both Brian and Mr. Peterson unless otherwise indicated or required by context.