887 A.2d 166 (2005)
381 N.J. Super. 532
Louise MORRISON, Plaintiff-Appellant,
v.
AMERICAN INTERNATIONAL INSURANCE COMPANY OF AMERICA, Defendant-Respondent.
Superior Court of New Jersey, Appellate Division.
Submitted October 26, 2005.
Decided December 9, 2005.
*168 Gerald F. Miksis, Atlantic City, attorney for appellant (Mr. Miksis, of counsel; Jonathan E. Diego, on the brief).
Thomas Dempster, III, Mount Laurel, attorney for respondent (John J. VanDyken, on the brief).
Before Judges FALL, GRALL and SAPP-PETERSON.
The opinion of the court was delivered by
SAPP-PETERSON, P.J.Cv. (temporarily assigned).
In this appeal, we are asked to determine whether the doctrine of reasonable expectations should be applied to set aside the step-down clause contained in an insurance policy issued by defendant, American International Insurance Company (AIIC), or alternatively, whether the manner in which the step-down clause amendment was issued breached defendant's duty of good faith and fair dealing.
On October 28, 2002, plaintiff was a permissive driver operating an auto owned and insured by her parents, Louise and Martin Haefele. She became involved in an accident with Thanh Tran from which she sustained injuries. At the time of the accident, plaintiff did not live with her parents and was not a named insured on any automobile insurance policy. When the Haefeles purchased their policy, they elected the no limitation on liability option with limits of $100,000 per person, $300,000 per accident, and underinsured motorist coverage with the same liability limits. These elections were reflected on the declaration page.
Plaintiff sued Tran for her personal injuries and settled for $50,000, the maximum liability under Tran's insurance policy. Plaintiff then filed an underinsured motorist claim with AIIC. AIIC denied the claim because plaintiff was neither a named insured nor a resident family member. In addition, the policy's step-down clause limited recovery to the statutory minimum for persons other than the named insured or resident family members. At the time of the accident, the statutory minimum coverage required for a claimant seeking underinsured motorist benefits was $15,000 per person, $30,000 per accident. N.J.S.A. 17:28-1.1. Since plaintiff was neither a named insured nor resident family member, and had received greater than the statutory minimum in her settlement with Tran, AIIC determined plaintiff was not entitled to any recovery.
Plaintiff filed a single-count declaratory judgment action against AIIC seeking an order declaring that plaintiff was a "family member" pursuant to the terms of the policy and was therefore not subject to the step-down provision. Plaintiff later amended the complaint to include a second count seeking a declaration that the terms of the policy were ambiguous and therefore the limits of underinsured motorist coverage should be the same as those afforded to the named insured.
Defendant moved for summary judgment, arguing that plaintiff, as a non-resident relative, was subject to the step-down provision, and because the settlement with Tran exceeded the statutory minimum limits for coverage, plaintiff was not entitled to receive any recovery under the Haefeles' policy. Plaintiff opposed the motion arguing that the terms of the policy were *169 ambiguous, first, because the step-down clause was hidden in the fine print of the uninsured motorist endorsement and was not included on the policy's declaration page, and second, because the step-down clause referenced only uninsured motorists and not underinsured motorists.
Judge William C. Todd, III, rejected plaintiff's argument. Although he acknowledged some facial ambiguity or confusion on the title page of the "Uninsured Motorist" endorsement, he noted that the terms "uninsured" and "underinsured" were referenced throughout the endorsement. He concluded there was no meaningful ambiguity or confusion. He also noted there had been no suggestion that the Haefeles "were given some specific advice or representation" that the scope of coverage extended to all occupants of their vehicles. Finally, Judge Todd found the provisions of the step-down clause "clearly appear[ed] to apply to someone in the plaintiff's position," that is, the provisions applied to a driver who was neither a named insured nor resident family member.
The disputed language in the step-down clause was part of a four-page endorsement to the fifteen-page policy. The endorsement section was captioned, "UNINSURED MOTORISTS COVERAGE  NEW JERSEY." Just above this caption, the language read, "This endorsement changes the policy. Please Read It Carefully."
The step-down language was set forth on the second page of the endorsement under Section A entitled "LIMIT OF LIABILITY." The specific language set forth in this section stated, "[w]ith respect to any `insured' who is not a named insured or `family member' under this policy, our maximum limit of liability for `bodily injury' is the minimum limit required by N.J.S.A. 17:28-1.1." A family member under the policy was defined as "a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or foster child."
It is well settled that insurance policies are contracts of adhesion and are therefore scrutinized with particularity. Zacarias v. Allstate Ins. Co., 168 N.J. 590, 594-95, 775 A.2d 1262 (2001). Where there is any ambiguity in the terms and conditions of the contract, "ambiguous language will be construed liberally and resolved against the insurer and in favor of coverage." Pinto v. New Jersey Mfrs. Ins. Co., 365 N.J.Super. 378, 387, 839 A.2d 134 (App.Div.2004), aff'd, 183 N.J. 405, 874 A.2d 520 (2005). In doing so, our "courts have endorsed the principle of giving effect to the `reasonable expectations' of the insured for the purpose of rendering a `fair interpretation' of the boundaries of insurance coverage." Di Orio v. New Jersey Mfrs. Ins. Co., 79 N.J. 257, 269, 398 A.2d 1274 (1979) (citing Kievit v. Loyal Protective Life Ins. Co., 34 N.J. 475, 482-83, 170 A.2d 22 (1961)). "Thus, the insured's `reasonable expectations' are brought to bear on misleading terms and conditions of insurance contracts and genuine ambiguities are resolved against the insurer." Ibid. (citing Remsden v. Dependable Ins. Co., 71 N.J. 587, 589, 367 A.2d 421 (1976); Bryan Constr. Co. v. Employers' Surplus Lines Ins. Co., 60 N.J. 375, 377-78, 290 A.2d 138 (1972); Gerhardt v. Cont'l Ins. Cos., 48 N.J. 291, 298-300, 225 A.2d 328 (1966)). Under this approach, courts seek to interpret the ambiguous language of the insurance contract objectively and from the perspective of the average policyholder, as far as the language of the insurance contract will permit. See Perrine v. Prudential Ins. Co. of Am., 56 N.J. 120, 126-27, 265 A.2d 521 (1970); Cooper v. Gov't Employees Ins. Co., 51 N.J. 86, 93-94, 237 A.2d 870 (1968); Linden Motor Freight Co. Inc. *170 v. Travelers Ins. Co., 40 N.J. 511, 524-526, 193 A.2d 217 (1963). See also Karl v. New York Life Ins. Co., 154 N.J.Super. 182, 186, 381 A.2d 62 (App.Div.1977).
On the other hand, it is equally well settled that notwithstanding the unequal bargaining power between an insurance company and an insured, "[i]f the policy language is clear, the policy should be interpreted as written." Nav-Its, Inc. v. Selective Ins. Co., 183 N.J. 110, 118, 869 A.2d 929 (2005) (citing President v. Jenkins, 180 N.J. 550, 562, 853 A.2d 247 (2004)). Where the terms of the policy are clear and unambiguous, it is not the function of the courts to rewrite the policy "to make a better policy of insurance than the one purchased." Gibson v. Callaghan, 158 N.J. 662, 670, 730 A.2d 1278 (1999) (quoting Longobardi v. Chubb Ins. Co., 121 N.J. 530, 537, 582 A.2d 1257 (1990)). These principles have been applied to enforce step-down provisions in insurance policies, provided the provisions are expressed in clear and unambiguous language. Murawski v. CNA Ins. Co., 183 N.J. 423, 874 A.2d 530, Pinto v. New Jersey Mfrs. Ins. Co., 183 N.J. 405, 874 A.2d 520 (2005), Magnifico v. Rutgers Cas. Ins. Co., 153 N.J. 406, 710 A.2d 412 (1998).
Plaintiff urges that the ambiguity in the policy issued to the Haefeles is evident by the fact that the only reference to the step-down clause is buried on page two of the four-page endorsement. Additionally, the step-down clause refers to a statute rather than to a specific monetary amount. Plaintiff maintains that there is stark contrast between the ambiguous step-down clause language, including its location, and the clear language contained on the declaration page. On the declaration page, the insured is advised that coverage for bodily injury and uninsured motorist coverage limitations per person, per accident, is $100,000/$300,000 and there is no asterisk or other signal directing the insured to the step-down clause. Thus, plaintiff contends the court is required under Lehrhoff v. Aetna Cas. Sur. Co., 271 N.J.Super. 340, 638 A.2d 889 (App.Div.1994), to conclude that the declaration page must control.
In Lehrhoff, the plaintiff filed an uninsured motorist claim with AETNA for injuries sustained while he was in California. Id. at 342, 638 A.2d 889. The insurance policy was issued to plaintiff's father, but it also listed plaintiff as a "regular driver" on the declaration page. Ibid. In addition to the named insured, the policy also covered any family member residing in the insured's household. Id. at 344, 638 A.2d 889. A family member was defined as "a person related to you by blood, marriage, or adoption who is a resident of your household." Id. at 345, 638 A.2d 889. AETNA denied the claim because it determined plaintiff was no longer a resident in his father's household. Id. at 342, 638 A.2d 889. Plaintiff commenced a declaratory action to compel coverage and defendant moved for summary judgment. The trial court granted the motion, agreeing that plaintiff was no longer a resident of the insured's household because he had left New Jersey. Id. at 345-46, 638 A.2d 889.
On appeal, we recognized that plaintiff was no longer a member of his father's household. Id. at 346, 638 A.2d 889. Our attention, however, focused upon the interaction between the declaration page and the policy and upon the reasonable expectations arising out of that interaction. Id. at 346-47, 638 A.2d 889. We concluded the listing of plaintiff on the declaration page was dispositive.
An important corollary of the reasonable-expectation doctrine ... is that reasonable expectations will, in appropriate circumstances, prevail over policy language to the contrary....

*171 * * * *
The natural, sensible and wholly justifiable inference is that by listing the drivers using the vehicle, including the insured himself, the purchaser of the policy is protecting all of them equally[.]... [N]othing in the declaration page suggests to the contrary[.] ...
[Id. at 347, 349, 638 A.2d 889.]
Lehrhoff, however, does not establish a bright line rule that the declaration page controls where important additional terms of the policy are not included on the declaration page but are reflected elsewhere. Zacarias, supra, 168 N.J. at 603, 775 A.2d 1262.
In Zacarias, plaintiff's spouse was injured while on board the family boat that plaintiff was operating. Id. at 593, 775 A.2d 1262. An intra-family exclusion provision within plaintiff's insurance policy precluded coverage for the injuries sustained by plaintiff's spouse. Ibid. Plaintiff filed a declaratory action seeking to void the intra-family exclusion, or alternatively, seeking indemnification because the insurance company failed to properly notify plaintiff of the intra-family exclusion. Id. at 594, 775 A.2d 1262. Both parties moved for summary judgment. The trial court denied plaintiff's motion, but granted defendant's motion finding no ambiguity in the language of the policy. A divided Appellate Division panel affirmed. Zacarias v. Allstate Ins. Co., 330 N.J.Super. 231, 749 A.2d 394 (App.Div.2000), aff'd, 168 N.J. 590, 775 A.2d 1262 (2001). The Supreme Court affirmed, and in doing so, discerned that two rules had emerged from the body of cases addressing insurance contracts and the reasonable expectations of the insured:
First, in enforcing an insurance policy, courts will depart from the literal text and interpret it in accordance with the insured's understanding, even when that understanding contradicts the insurer's intent, if the text appears overly technical or contains hidden pitfalls, Kievit, supra, 34 N.J. at 482 [170 A.2d 22], cannot be understood without employing subtle or legalistic distinctions, id. at 488 [170 A.2d 22], is obscured by fine print, Gerhardt, supra, 48 N.J. at 293 [225 A.2d 328], or requires strenuous study to comprehend, Sparks [v. St. Paul Ins. Co., 100 N.J. 325, 339, 495 A.2d 406 (1985)].
Second, the plain terms of the contract will be enforced if the "entangled and professional interpretation of an insurance underwriter is [not] pitted against that of an average purchaser of insurance," Di Orio, supra, 79 N.J. at 270 [398 A.2d 1274], or the provision is not so "confusing that the average policyholder cannot make out the boundaries of coverage," Weedo [v. Stone-E-Brick, Inc., 81 N.J. 233, 247, 405 A.2d 788 (1979)].
[Zacarias, supra, 168 N.J. at 601, 775 A.2d 1262.]
The Court emphasized that the declaration page is the one page an insured is most likely to read and therefore insurers should "explore ways to incorporate as much information as may be reasonably included in the declarations sheet." Id. at 603-04, 775 A.2d 1262. The Court, however, refused to endorse a per se rule that an insurance contract is ambiguous solely because its declarations sheet, definitions section, and exclusion provisions are separately presented:
A rule of construction forcing insurers to avoid all cross-referencing in policies would require them to reprint the entire definition section on each page of the policy, or to define each term every time it is used. That proliferation of fine print would itself demand strenuous study and run the risk of making insurance *172 policies more difficult for the average insured to understand.
[Id. at 603, 775 A.2d 1262.]
Thus, the question of whether an insurance policy is ambiguous is not resolved by focusing upon the language contained in one section of the contract. Werner Indus., Inc. v. First State Ins. Co., 112 N.J. 30, 37, 548 A.2d 188 (1988). Instead, the offending section should be read in the context of the entire policy in order to determine whether harmony can be found between the alleged ambiguous language and the remainder of the policy. Zacarias, supra, 168 N.J. at 603, 775 A.2d 1262.
In this case, the step-down provision is found under the section designated in capital letters as "LIMIT OF LIABILITY." Within that section are five subsections separated by letters. The step-down clause is set forth in Section A, which reads as follows:
A. The limit of Bodily Injury Liability shown in the Schedule or Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of "bodily injury" sustained by any one person in any one accident. Subject to this limit for each person, the limit of Bodily Injury Liability shown in the Schedule or Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for "bodily injury" resulting from any one accident.
The limit of Property Damage Liability shown in the Schedule or Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all "property damage" resulting from any one accident. However, with respect to any "insured" who is not a named insured or "family member" under this policy, our maximum limit of liability for "bodily injury" is the minimum limit required by N.J.S.A. 17:28-1.1.
All the words set off in quotation marks are defined on the policy's definitions page. Unlike the first two paragraphs of this section that specifically address uninsured motorist coverage, the third paragraph makes no reference to either uninsured or underinsured motorist coverage. Rather, it simply and clearly states that the insurer's liability as to any insured who is not a named insured or resident family member is the minimum amount contained in the specifically identified statute. Further, although the first page of the four-page endorsement is captioned "Uninsured Motorists," there is reference throughout the endorsement to both uninsured and underinsured motorists. Because the step-down provision mentions neither class of drivers, it reasonably follows that the step-down provision applies to underinsured motorists as well as uninsured motorists.
Plaintiff's reliance upon Skeete v. Dorvius, 368 N.J.Super. 311, 845 A.2d 1265 (App.Div.2004), aff'd 184 N.J. 5, 875 A.2d 859 (2005), is misplaced. There, we found that the notice to the insured of the step-down language was inadequate. Id. at 317, 845 A.2d 1265. It was included in the renewal policy that was part of a 200-page document sent to the insured over a two-week period. Ibid. Our reasoning in Skeete reflects the longstanding elemental principle of "business morality and decency" articulated by Justice Jacobs in Bauman v. Royal Indem. Co., 36 N.J. 12, 174 A.2d 585 (1961), that "[a]bsent notification that there have been changes in the restrictions, conditions or limitations of the policy, the insured is justly entitled to assume that they remain the same and *173 that his coverage has not in anywise been lessened." Id. at 25, 174 A.2d 585 Here, however, the step-down language in the Haefeles' policy was contained in the original policy. As such, the Haefeles were subject to another elemental "principle of business morality and decency," namely, "[w]hen an insured purchases an original policy of insurance he may be expected to read it and the law may fairly impose upon him such restrictions, conditions and limitations as the average insured would ascertain from such reading." Ibid. See also Greer v. Naklicki, 379 N.J.Super. 153, 164, 877 A.2d 298 (App.Div.2005). Likewise, we continue to adhere to the maxim that an insured is chargeable with knowledge of the contents of "an insurance policy in the absence of fraud or inequitable conduct on the part of the carrier." Edwards v. Prudential Prop. and Cas. Co., 357 N.J.Super. 196, 204, 814 A.2d 1115 (App.Div.2003) (citing Merchants Indem. Corp. v. Eggleston, 37 N.J. 114, 121-22, 179 A.2d 505 (1962)), certif. denied, 176 N.J. 278, 822 A.2d 608 (2003).
The Haefeles do not state they failed to read the policy, nor do they indicate that defendant, through any agent or representative, led them to believe the scope of their coverage was extended to all occupants of their vehicle. They simply state their understanding was that the scope of their coverage extended to all occupants. As the Court similarly observed in Zacarias, the policy here is far from perfect. While it may have been more prudent to specifically direct the insured to the step-down language, the entire policy consisted of only fifteen pages. Moreover, the definitions page, in clear and simplistic language, defined "insured" and "family member." The step-down language clearly stated that coverage for bodily injury was limited for persons other than the named insured or resident family member. Additionally, the step-down language was contained in the section with the capitalized heading, "LIMITS OF LIABILITY." This heading would alert the average insured that coverage was being limited, and therefore the average insured would have read the provision. Bauman, supra, 36 N.J. at 25, 174 A.2d 585. Consequently, when the policy is read in its entirety, it clearly places the insured on notice of the coverage limitations. Zacarias, supra, 168 N.J. at 603, 775 A.2d 1262.
Plaintiff also advances the claim that AIIC breached its duty of good faith and fair dealing by failing to: (1) reflect the "change" in the declaration sheet; (2) send separate correspondence; or (3) orally notify the Haefeles of the step-down clause. We find no merit to this claim for two reasons. First, as discussed earlier, the step-down clause was included in the original policy issued to the Haefeles. Second, nothing in the amended policy issued to the Haefeles supports the conclusion that defendant acted with "bad motive or intention" in the drafting or placement of the step-down language. Wilson v. Amerada Hess Corp., 168 N.J. 236, 251, 773 A.2d 1121 (2001). As the Supreme Court recently stated in Brunswick v. Route 18 Shopping Ctr., 182 N.J. 210, 864 A.2d 387 (2005):
Proof of "bad motive or intention" is vital to an action for breach of the covenant. Wilson, supra, 168 N.J. at 251 [773 A.2d 1121]. The party claiming a breach of the covenant of good faith and fair dealing "must provide evidence sufficient to support a conclusion that the party alleged to have acted in bad faith has engaged in some conduct that denied the benefit of the bargain originally intended by the parties." Williston on Contracts, 63:22, at 513-14 (Lord ed.2002) (footnotes omitted); see also Wilson, supra, 168 N.J. at 251 [773 *174 A.2d 1121]; Sons of Thunder v. Borden, Inc., 148 N.J. 396, 420 [690 A.2d 575] (1997).
[Id. at 225, 864 A.2d 387.]
Although the uninsured motorist endorsement section indicates that the endorsement amendment was effective March 1999, there was never any contention that defendant inserted this amendment without notice and then subsequently issued the amendment in a renewal policy sent to the Haefeles. Skeete, supra, 368 N.J.Super. at 319, 845 A.2d 1265. No evidence was presented suggesting the step-down language was hidden. The clause was one of seven. It immediately followed the "INSURING AGREEMENT" and "EXCLUSIONS" and preceded "OTHER INSURANCE," "ARBITRATION," "ADDITIONAL DUTIES," and "OUR RIGHT TO RECOVER PAYMENT" (capitalization in original). The typeface was the same size as that of the other provisions contained in the policy and the clause was only five lines long. Further, there is no evidence that AIIC positioned the clauses or provisions with the intent to deceive or mislead the insured. Therefore, when the record is viewed in the light most favorable to the plaintiff, no genuinely disputed issue of fact was presented to the motion judge sufficient to withstand the grant of summary judgment in favor of defendant on the breach of the covenant of good faith and fair dealing claim. Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540, 666 A.2d 146 (1995).
Affirmed.