217 N.J. Super. 249 (1986)
525 A.2d 349
RICHARD ROSENBERG, ADMINISTRATOR OF THE ESTATE OF SCOTT ROSENBERG, PLAINTIFF,
v.
UNIVERSAL UNDERWRITERS INSURANCE COMPANY, DEFENDANT.
Superior Court of New Jersey, Law Division Gloucester County.
Decided August 29, 1986.
*250 Harris Y. Cotton for plaintiff.
Stanley H. Needell for defendant (Needell & Needell, attorneys).

*251 CIVIL ACTION OPINION
HOLSTON, J.S.C.
This is an action for recovery of Personal Injury Protection, hereinafter "P.I.P.", benefits under N.J.S.A. 39:6A-10.
Richard Rosenberg is the president and sole shareholder of Varsity Autos, Inc. The Corporation operated a wholesale automobile business and had a fleet of cars. These cars were insured by defendant, Universal Insurance Co., hereinafter "Universal", through an agent, Rosenberg & Sinderbrand, hereinafter "R & S", under a garage insurance policy. R & S had been writing insurance for Rosenberg for approximately eight years. Rosenberg, his wife, Marilyn, and his two sons, Kenneth and Scott, did not own cars in their own name, having always used company cars. Scott was an employee of the Corporation.
The policy in question had been in effect since 1981 under an assigned risk plan and included basic P.I.P. coverage required under N.J.S.A. 39:6A-4.
That statute required P.I.P. benefits be made available to the insured, any relative of the named insured or any person with the insured's permission who occupies, uses, enters or alights from the insured's automobile or, while a pedestrian, in an accident caused by the insured automobile or as a result of being struck by an object propelled by or from the insured automobile.
In November 1981, based on Rosenberg's intent to provide insurance protection for his family, R & S advised Universal that Marilyn and Kenneth were to be added as drivers and that P.I.P. "Option 5", under N.J.S.A. 39:6A-10 should be added to the policy. Universal acknowledged this coverage effective November 3, 1981 and renewed the policy as amended in May 1982.
On January 7, 1983, Scott, while in Florida, was struck by an automobile and died from the injuries sustained. A claim for *252 benefits was made by Richard Rosenberg under the policy with Universal. That claim has been refused on the grounds that Scott was not insured under that policy.
The following facts are stipulated:
(1) The benefits under the policy are to be interpreted under N.J.S.A. 39:6A-10, prior to its amendment in 1982, making additional benefits available to the "named insured" described in N.J.S.A. 39:6A-4.
(2) If the Court determines that plaintiff is entitled to benefits under the policy, defendant will pay the following damages:

 a. Lost wages $41,600.00
 b. Essential services $14,600.00
 c. Death benefits $10,000.00
 d. Funeral expenses $ 1,000.00
 e. Medical bills $ 2,558.90
 f. Such interest and attorney's fees as the Court may allow.

ployees Ins. Co., 170 N.J.Super 140 (Law Div. 1979), aff'd., 174 N.J.Super 162 (App.Div. 1980) (per curiam). Salvatore Giambri was an employee of his family's closely-held corporation. He was injured when an uninsured motorcycle on which he was riding collided with an automobile. The corporation's insurance carrier denied coverage. The Court held that to allow coverage would "ignore the corporate entity ... by treating the corporation's automobile policy as a family policy". (Id. at 142.) The Court further stated:
The court, therefore, holds that under the facts of this case, an automobile liability insurance policy issued to a family-held corporation as the named insured does not provide coverage to members of the family "as members of the family of the named insured" under N.J.S.A. 39:6A-4. Had plaintiff sustained his injuries while operating or riding as a passenger in one of the four company automobiles, or had plaintiff been struck as a pedestrian by one of the four company automobiles, he would have been entitled to coverage regardless of his status as a family member. Defendant was, therefore, providing effective coverage to the corporation under the personal injury protection provisions of the policy. [at 143.]
Universal contends, therefore, that since it, too, provided a policy covering a corporation under N.J.S.A. 39:6A-4, only a corporate policy existed, not a family household one. However, *253 at trial, Universal produced only one witness from its company, an employee in the underwriting department, who was unable to state the company's position as to who is covered under Option 5 on a corporate garage policy of liability.
Giambri dealt with the interpretation of mandatory P.I.P. coverage as applied to a corporate insurance policy but did not consider the effect of optional coverage under N.J.S.A. 39:6A-10. The distinction between these sections was addressed in Clendaniel v. N.J.Mfrs. Ins. Co., 96 N.J. 361 (1984), which interpreted "Option 5" to conform to the present language of the statute. The Court said:
Our interpretation that the availability of Section 10 optional coverage is for more than the named insured but for fewer than all the persons covered in Section 4 conforms with the general rules of statutory construction. N.J.S.A. 39:6A-10 speaks of "named insured covered under section 4." If the statute required the availability of optional benefits for the named insured only, then the phrase "covered under section 4" would be meaningless. On the other hand, if the statute required the availability of optional benefits for all persons covered under section 4, then the phrase "named insured" would be superfluous because named insureds are covered under section 4 ... [at 367.]
... We cannot discern any valid policy reason why the Legislature would require insurers to make available for purchase additional coverage for the policyholder and his or her spouse without giving the named insured the right to obtain added protection for his resident relatives.
Section 4 benefits are mandatory. Section 10 benefits, however, are optional. To obtain additional coverage under Section 10, the insured must pay an additional premium ... we cannot discern any valid reason why the named insured would want to pay extra premium to provide additional benefits for a guest passenger or an unknown pedestrian ... [at 368.]
... We conclude that the Legislature intended that N.J.S.A. 39:6A-10, prior to its 1981 amendment, required an insurer to offer to the named insured the option of purchasing additional Section 10 P.I.P. benefits only for the named insured and resident relatives residing in the named insured's household. [at 370.]
Since this option was requested by Rosenberg and since he was paying an additional premium, to hold that under Giambri only the corporation was insured, would mean that Rosenberg was paying an additional premium for family insurance coverage under which no one was covered. This was certainly not the intent of the Legislature. Its effect could not be explained by the insurance company.
*254 This Court holds that where a general garage policy for liability covering a closely-held corporation includes Option 5 under N.J.S.A. 39:6A-10, coverage is afforded to the corporation owner, his spouse and resident members of the household. This conclusion is not inconsistent with Giambri, which would still limit coverage under N.J.S.A. 39:6A-4 to the Corporation. This distinction is consistent with Clendaniel, supra.
As this Court has determined that insurance coverage is available to the insured and resident members of his household, this Court must now determine whether Scott Rosenberg was a resident member of the household at the time of the accident. Scott had lived with his parents for his entire life, except for a short period of time when he lived with his girlfriend around the corner from his parents. Four days before the accident, Scott packed a small backpack and hitchhiked to Georgia with his girlfriend, leaving behind several personal items including a stereo and camera. After spending only one night in Georgia at a trailer belonging to a friend of his girlfriend's, he continued on alone to Florida to visit his cousin, a psychologist. It was there that Scott died. Additionally, Scott indicated to the plaintiff, Richard Rosenberg, when he left for Georgia, that he would be away approximately 10 days or 2 weeks. Rosenberg had telephone conversations with Scott at his cousin's residence in Florida with no indication from Scott that he had intended to change his residence from New Jersey to Georgia or Florida. There was, for example, no request by Scott to his father to ship his clothes and belonging to Georgia or Florida.
Scott was on probation for prior drug-related offenses. There was conflicting testimony between Scott's girlfriend and his probation officer as to whether Scott was drug-free before leaving for a few weeks to try to get off drugs. His probation officer testified that Scott was drug-free when he left. However, the autopsy report revealed that there were fresh needle marks on Scott's arm, indicating he probably was still on drugs. Scott's girlfriend's testimony, therefore, appears credible.
*255 Prior to his leaving for Georgia, Scott notified his probation department of his intention to move to Georgia and completed an Application for Supervision as Probationer, pursuant to the Interstate Compact for Supervision of Probationers applying for permission to be supervised for probation in Georgia, indicating he would make his residence in Woodbine, Georgia. He further signed an Agreement waiving extradiction and an Agreement to Return. The application and agreement were signed January 3, 1983 and judicial approval was granted January 7, 1983, one day prior to his death in Florida of January 8, 1983.
The town he listed as his proposed residence was, in fact, 50 miles from where he actually went in Georgia and from where he spent the night prior to his visiting with his cousin in Florida. During the four days that elapsed from the day he left New Jersey until the day of his death, he never set foot in Woodbine, Georgia.
An examination of case law not only in New Jersey but other jurisdictions as well, reveal that there is no fixed definition of the word "residence". The application of the word varies tremendously. In Collins v. Yancey, 55 N.J. Super. 514 (Law Div. 1959), the Court considered this issue:
The word "residence" is a word whose statutory meaning must largely be determined from the purpose and context of the statute involved. The various definitions and interpretations apparently result from the fact that the meaning of the word in most cases depends largely upon a finding of fact as to the intention of the individual concerned. A mental process can only be determined by the acts, statements and conduct of the individual involved, with due regard to the general circumstances existing...
... The various definitions found in the many court decisions of this country of the word "residence" indicate a very wide range of interpretations of the meaning of this term that almost defy classification in any satisfactory manner.
This Court has found no New Jersey cases that interpret the meaning of "residence" as used in an insurance contract. Many cases involve recovery under the Unsatisfied Claim and Judgment Fund. Since this fund is similar to insurance in that it is designed to compensate an injured plaintiff, these cases are helpful to the Court in interpreting "resident" in an insurance *256 context. These cases discuss the word "resident" or "residence" in conjunction with "domicile". Although "domicile" is not an issue in the case at bar, in order to focus on a definition of "resident" or "residence", a discussion of "domicile" is appropriate. The Court in Collins, supra, defined "domicile" of a person as "the place where he has his true, fixed, permanent home and principal establishment and to which, whenever he is absent, he has the intention of returning".
The Collins case involved a man injured by an uninsured driver in New Jersey who applied for payment from the U.C.J.F. He had been employed as a cook for five months prior to the injury. All of his possessions were in a room he rented in Linden, New Jersey. He originally lived in Norfolk, Virginia with his sister. His testimony at trial and his answers to interrogatories indicated that he intended to retain his domicile at his sister's home in Norfolk. The Court determined that he was eligible for payment from the Fund and held:
A person may have several residences or places of abode. However, he can only have one domicile at one time. Domicile of choice is essentially a question of residence and intention, of factum and animus. A person may have his residence in one place with his domicile in another. Every person, under all circumstances and conditions, is deemed to have a domicile somewhere. The terms "domicile" and "residence" are not convertible terms or synonymous. It is not uncommon in our way of life for persons to have one or more residences based on reasons of health, society, business or employment, without in any wise relinquishing their domicile. Cromwell v. Neeld, 15 N.J.Super 296 (App. Div. 1951); Kurilla v. Roth, 132 N.J.L. 213 (Sup.Ct. 1944).
A contrary result reached in Continos v. Parsekian, 68 N.J. Super. 54 (App.Div. 1961), involved a citizen of Greece who came to this country in 1956 on a student visa. During the summer, when not attending Oklahoma State University, he stayed with friends in New Jersey. In 1958, he was injured when struck by a motor vehicle. He had rented a room in Newark only two weeks previous to the accident. He sought to recover as a "resident" under the U.C.J.F. The Court preliminarily observed that:
(a) in resolving the issue here presented our courts have repeatedly, and in a variety of factual situations, recognized the difference between the meaning *257 of the words "domicile" and "residence", Cromwell v. Neeld, 15 N.J.Super 296, 300 (App.Div. 1951); In Re: Michelsohn's Will, 136 N.J. Eq. 387 (Prerog. 1944); Kurilla v. Roth, 132 N.J.L. 213 (Sup.Ct. 1944); (b) that a person "may have several residences or places of abode but he can have only one domicile at a time". Cromwell, supra, 15 N.J. Super. at p. 300; (c) that the word "resident" has varied meanings and significance dependent on the connection in which it occurs and the result designed to be accomplished by its use and that those factors also determine whether it should be given a broad or a restricted construction.
The Court found that the plaintiff's presence in New Jersey in 1956 and 1957 "had been for visits only ... solely for the purpose of visiting friends" and that the record was "barren of any proof as to how long in 1958 plaintiff intended to remain in the State". The Court concluded that his actions negate any intention to be a "resident of this State".
Except for the Application for Change of Probation filed with the Probation Department, Scott told no one that he was moving. In fact, his girlfriend testified that Scott was going to Georgia for a minimum of three days but no more than two or three weeks and that he was probably returning to work with his father.
Scott is dead; his intentions can only be surmised from the evidence in this trial. Considering all the evidence that could establish Scott as a resident of his father's household, including the various places visited by him on his journey through Georgia and Florida during the four days before his death, the inconsistent change of address with probation, not mentioning a move to anyone, including his father, the meager belongings he had with him when he left his father's home and the belongings he left behind, the girlfriend's testimony of his reason for leaving temporarily and his consistent residence with his parents in the past, this Court finds that the preponderance of the credible evidence establishes that Scott was still a resident member of his father's household at the time of his death.
Since this Court holds that Option 5 insurance coverage exists under 39:6A-10 to resident members of the household of the owner of a closely-held corporation under the corporation's *258 garage insurance policy and that Scott Rosenberg was a resident member of his father's household at the time of his death, judgment may be entered in favor of the plaintiff for the stipulated damages enumerated above.
Plaintiff shall also be entitled pursuant to N.J.S.A. 39:6A-5(c) to interest based on the notice provisions contained in N.J.S.A. 39:6A-5(b) at the rate of interest provided by R. 4:42-11.
This Court will award reasonable counsel fees to plaintiff upon plaintiff's counsel, on notice to defendant's counsel, bringing an appropriate motion with affidavit of services attached. See Maros v. Transamerica Insurance Co., 76 N.J. 572, 579 (1978).
Plaintiff's counsel will prepare a form of judgment consistent with this Opinion.