271 N.J. Super. 340 (1994)
638 A.2d 889
STEVEN LEHRHOFF AND ARTHUR H. LEHRHOFF, PLAINTIFFS-APPELLANTS,
v.
THE AETNA CASUALTY AND SURETY COMPANY, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 11, 1994.
Decided March 14, 1994.
*342 Before Judges PRESSLER, DREIER and KLEINER.
Domenic D. Toto argued the cause for appellants (Starr, Gern, Davison & Rubin, attorneys; Mr. Toto, on the brief).
John J. Robertelli argued the cause for respondent (Harwood, Lloyd, Ryan, Coyle & McBride, attorneys; Thomas B. Hanrahan, of counsel; Mr. Robertelli, on the brief).
The opinion of the court was delivered by PRESSLER, P.J.A.D.
This is an appeal from a summary judgment dismissing a complaint seeking uninsured motorist coverage (UM) under a standard automobile policy. It requires us to consider the question of whether the reasonable expectations of the insured raised by the declarations page of the policy may be defeated by express policy provisions to the contrary. Under the circumstances here, we hold that the policy's fine print qualification of the definition of persons entitled to UM coverage was insufficient to overcome the reasonable expectation of coverage raised by the declaration page and by the express terms of the UM coverage itself.
Defendant Aetna Casualty and Surety Company issued a standard automobile policy to plaintiff Arthur H. Lehrhoff which included uninsured and underinsured motorist coverage. Plaintiff Steven Lehrhoff, an adult son of the insured, was named on the declarations page of the policy as a regular driver of the insured vehicle along with his father, his mother, and his younger brother. During the policy period, Steven Lehrhoff, while a pedestrian, was injured in California in a traffic accident he attributed to the fault of an unidentified motorist. He claimed UM benefits under the policy. Aetna rejected the claim on the ground that Steven was no longer a resident of his father's household when the injuries were sustained. Father and son consequently commenced this *343 action against Aetna seeking a declaration of Steven's right to UM coverage. The motion judge entered summary judgment dismissing the complaint having concluded that Steven's residence in his father's household had in fact terminated by the date of the accident. Plaintiffs appeal. We reverse because we are satisfied that under the circumstances here, Steven, as a named driver, was entitled to UM coverage whether or not he was then a member of his father's household.
The Lehrhoff family resides in Short Hills, New Jersey. After his graduation from high school in 1986, Steven attended college in Illinois, coming home during school holidays. Following his college graduation in June 1990, he returned home for several weeks, travelled abroad for several weeks, and spent the rest of the summer in Short Hills. His plan was to apply for law school admission in the fall of 1991, and in order to explore the possibilities of a legal career had decided to work in a law-related job for a year. He went to Los Angeles, California, with a group of college friends in September 1990 and obtained employment as a legal assistant in a law firm for an initial ninety-day probationary period. Although he asserts that he regarded his California residence as temporary, that he intended to return to New Jersey after his California adventure and that he had continued to maintain significant ties with his New Jersey home, he did obtain a California drivers license in late September 1990, presumably, however, retaining his New Jersey license. The automobile he had with him was, however, a family automobile, owned by his father, registered in New Jersey, and insured by Aetna under the New Jersey policy here in question. It was the only vehicle covered by the policy.
The accident occurred on October 25, 1990, about half-way through Steven's probationary period. He was struck by a bicycle while crossing the street and claimed that the bicyclist had been forced into his path by an unidentified automobile. Steven's injuries were serious and he was hospitalized for a period of time.
*344 The automobile policy whose terms we must construe was issued for a six-month period commencing June 1, 1990, before Steven went to California. The declaration page of the policy identified Arthur Lehrhoff as the insured. It contained the customary information respecting the included coverages and their amount,[1] the premiums charged for each, identification of applicable endorsements specifically including personal injury protection (PIP), and identification of the automobile. In the box designated "Driver Information," the four members of the family were named together with their dates of birth and their respective intended percentage of use of the vehicle, Steven's being listed as thirty-five percent. No information respecting the address of a listed driver or the driver's relationship to the named insured was either requested or supplied.
The policy itself is the usual multi-page document with a variety of sections describing, defining, and limiting each of the coverages. The UM coverage section starts at the bottom of page six and is encaptioned "Part C  Uninsured Motorist Coverage." The policy also has a page entitled "Amendment of Personal Auto Policy-New Jersey." The subject of the amendment is not noted in the title but the text informs the insured that "Part C of your policy is replaced by the following:" Then follows a revised Part C. Only a determined, persistent and experienced reader knowing precisely what information he is seeking would be able even to find the applicable sections of the policy.
The UM coverage itself undertakes to pay damages which a "covered person" is entitled to recover from the owner of an uninsured automobile, defined to include the so-called phantom vehicle. "Covered person" is defined for purposes of the UM coverage as:
1. You or any family member.

*345 2. Any other person occupying your covered auto.
3. Any person for damages that person is entitled to recover because of bodily injury:
a. to which this coverage applies; and
b. which is sustained by a person described in 1. or 2. above.
We pass the rather intriguing question of the meaning of number 3. above to note that "family member" for purposes of identifying a person entitled to UM coverage does not mean, as one might think, any family member, or indeed, as one might also think, any immediate family member or even any immediate family member listed on the declaration page. It means none of these because some pages away from Part C there is a general definitions section to which Part C does not refer by cross-reference or otherwise which limits the meaning of "family member" for purposes of Part C coverage. A careful scrutiny of the full text of the general definition section instructs that family member "means a person related to you by blood, marriage or adoption who is a resident of your household." It is, of course, that definition on which Aetna relied in disclaiming since Steven, it asserted, was no longer a resident of his father's household when his accident occurred.
The ensuing summary judgment motion focused on the traditional indicia of residence as construed for purposes of insurance policy coverage. See, e.g., Mazzilli v. Accident & Cas. Ins. Co. of Winterthur, Switzerland, 35 N.J. 1, 170 A.2d 800 (1961); Sjoberg v. Rutgers Cas. Ins. Co., 260 N.J. Super. 159, 615 A.2d 660 (App.Div. 1992); Rosenberg v. Universal Underwriters Ins. Co., 217 N.J. Super. 249, 525 A.2d 349 (App.Div. 1986), aff'd, 224 N.J. Super. 638, 541 A.2d 246 (App.Div.), certif. denied, 113 N.J. 333, 550 A.2d 449 (1988). Despite Steven's sworn assertion that his residence in California was temporary and that he intended to return to his family home where he still had his room and some of his belongings and his family ties, the judge concluded, on the basis of the summary judgment motion papers, that these indicia were outweighed by Steven's actual presence in California, his *346 acceptance of a job there, his changing of his address on his credit cards, his obtaining of a California drivers license, his opening of a bank account in Los Angeles, and, after the accident, his registration to vote in California. Accordingly, the judge was satisfied that beyond any question of fact, Steven was not a resident of his father's household within the terms of the policy in October 1990 and granted summary judgment dismissing the complaint.
While we agree that the indicia of Steven's residence in California on the date of the accident were strong, we would not exclude, as a factual proposition requiring plenary evidential resolution, Steven's continued residence in New Jersey by reason of his expressed animus revertendi or, at least on the day of the accident some seven weeks after he left New Jersey, by reason of application of the doctrine of dual residency. See, respectively, e.g., Peff v. Peff, 2 N.J. 513, 67 A.2d 161 (1949); and State v. Benny, 20 N.J. 238, 119 A.2d 155 (1955). We do not, however, now explore those issues because we are satisfied that Steven is entitled to UM coverage for other reasons, namely, his inclusion on the declaration page as a driver of the insured vehicle within the context of this policy.
There has been little judicial consideration of the import of the declaration page of an insurance policy in terms of the construction of the policy as a whole and in terms of its capacity to define the insured's reasonable expectations of coverage. We, however, regard the declaration page as having signal importance in these respects. A personal automobile insurance policy is a bulky document, arcane and abstruse in the extreme to the uninitiated, unversed and, therefore, typical policyholder. We are persuaded, therefore, that a conscientious policyholder, upon receiving the policy, would likely examine the declaration page to assure himself that the coverages and their amounts, the identity of the insured vehicle, and the other basic information appearing thereon are accurate and in accord with his understandings of *347 what he is purchasing. We deem it unlikely that once having done so, the average automobile policyholder would then undertake to attempt to analyze the entire policy in order to penetrate its layers of cross-referenced, qualified, and requalified meanings. Nor do we deem it likely that the average policyholder could successfully chart his own way through the shoals and reefs of exclusions, exceptions to exclusions, conditions and limitations, and all the rest of the qualifying fine print, whether or not in so-called plain language. We are, therefore, convinced that it is the declaration page, the one page of the policy tailored to the particular insured and not merely boilerplate, which must be deemed to define coverage and the insured's expectation of coverage. And we are also convinced that reasonable expectations of coverage raised by the declaration page cannot be contradicted by the policy's boilerplate unless the declaration page itself clearly so warns the insured.
These conclusions are in accord with what we understand to be fundamental precepts of insurance-policy construction, principles which were developed over the years to protect insureds from what Judge Baime has aptly characterized as the insurance industry's "unholy mantra" of "we collect premiums; we do not pay claims." Owens-Illinois, Inc. v. United Ins. Co., 264 N.J. Super. 460, 491, 625 A.2d 1 (App.Div. 1993). Thus, as Justice Jacobs succinctly explained more than three decades ago in Kievit v. Loyal Protect. Life Ins. Co., 34 N.J. 475, 482, 170 A.2d 22 (1961):
When members of the public purchase policies of insurance they are entitled to the broad measure of protection necessary to fulfill their reasonable expectations. They should not be subjected to technical encumbrances or to hidden pitfalls and their policies should be construed liberally to the end that coverage is afforded "to the full extent that any fair interpretation will allow." [Citations omitted].
An important corollary of the reasonable-expectation doctrine, at least in respect of the consumer market, is that reasonable expectations will, in appropriate circumstances, prevail over policy language to the contrary. Justice Jacobs put it this way in Kievit: *348 "Where particular provisions, if read literally, would largely nullify the insurance, they will be severely restricted so as to enable fair fulfillment of the stated policy objective." Id. at 483, 170 A.2d 22. The reasonable expectation doctrine was further expounded by the Supreme Court in Sparks v. St. Paul Ins. Co., 100 N.J. 325, 338-339, 495 A.2d 406 (1985), in which Justice Stein explained that:
The interpretation of insurance contracts to accord with the reasonable expectations of the insured, regardless of the existence of any ambiguity in the policy, constitutes judicial recognition of the unique nature of contracts of insurance. By traditional standards of contract law, the consent of both parties, based on an informed understanding of the terms and conditions of the contract is rarely present in insurance contracts. (Citation omitted). Because understanding is lacking, the consent necessary to sustain traditional contracts cannot be presumed to exist in most contracts of insurance. Such consent can be inferred only to the extent that the policy language conforms to public expectations and commercially reasonable standards. (Citation omitted). In instances in which the insurance contract is inconsistent with public expectations and commercially accepted standards, judicial regulation of insurance contracts is essential in order to prevent overreaching and injustice. R. Keeton, supra, [Insurance Law (1971)] 350-52; R. Keeton, "Insurance Law Rights at Variance with Policy Provisions," 83 Harv. L.Rev. 961, 967 (1970). One commentator has stated the principle as follows:
The objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations. [R. Keeton, supra, at 351; R. Keeton, supra, 83 Harv.L.Rev. at 967.]
See also Morton Intern., Inc. v. General Acc. Ins. Co. of America, 134 N.J. 1, 76, 629 A.2d 831 (1993); Gerhardt v. Continental Ins. Co., 48 N.J. 291, 299, 225 A.2d 328 (1966).
The question then, as we view it, is whether the typical automobile policyholder would understand and expect from the declarations page of this policy that each of the listed drivers was entitled to all of the coverages and all of the protections afforded by the policy. We are also satisfied that this question must be answered in the affirmative.
We are aware that an insurance company may have its own reasons for requesting the information as to the identity, age and *349 proportionate use of the regular drivers of the insured vehicle. Such information may be relevant to its premium calculations and its statistical gathering. Compare Remsden v. Dependable Ins. Co., 71 N.J. 587, 367 A.2d 421 (1976). But we look at the declaration page from the point of view of the insured. All that really appears on it is identity of coverages and identity of drivers. The natural, sensible and wholly justifiable inference is that by listing the drivers using the vehicle, including the insured himself, the purchaser of the policy is protecting all of them equally and, presumably, protecting them equally in respect of all the stated coverages without qualification and without limitation. Nothing in the declaration page suggests to the contrary, and nothing in the UM coverage section of the policy suggests to the contrary either. Indeed, the insured's expectation would be reinforced if he got as far as reading the UM provision by its apparently unqualified reference to family member as a covered person. He would also have to find and read the general definition section and appreciate the scope of its applicability to understand otherwise.
We further point out that in this case, each of the four named drivers including Steven was, at the time the policy was issued, a resident member of the insured's household and therefore entitled to the full benefit of all the coverages. We assume, therefore, that the premium for the entire policy period was calculated on that basis. Nothing in the policy, furthermore, required the insured to report to the company any change of residence of any of the drivers during the policy period, an obligation which, if it had been clearly imposed by the policy, might have alerted him to the significance of Steven's California sojourn vis-a-vis the continuation of coverage. In any event, even if the insured had been aware of that obligation, when did it arise? Steven had, presumably, been fully covered by his father's insurance while in Illinois as a college student. At what point should his father have realized that his son's California experiment had ripened into a termination of his New Jersey residence and so advised the carrier? As soon *350 as seven weeks after his departure and while he was still in a probationary program? Not necessarily.
Our point is plain. When Steven took the car to California he and his family had every reason to believe that both driver and vehicle were fully covered by all the protections of the insurance policy. The declaration page gave them that reasonable belief. The text of the UM coverage supported that belief. Only a full, careful, sophisticated, and experienced reading of the full policy would have informed them otherwise. Under these circumstances, we are convinced that giving effect to the family-member limitation in the general definition section would unfairly defeat the insured's reasonable expectations. This is, in our view, one of those "instances in which the insurance contract is inconsistent with public expectations and commercially accepted standards" thus requiring "judicial regulation ... in order to prevent overreaching and injustice." Sparks, supra.
As we have noted, judicial consideration of the significance of the declaration page of the policy in this context is sparse. The Supreme Court of Arizona, however, on analogous facts has reached the same conclusion we have in construing identical policy language. In Gordinier v. Aetna Cas. & Sur. Co., 154 Ariz. 266, 742 P.2d 277 (1987), a husband and wife obtained an Aetna automobile policy listing the husband as the insured and both spouses as drivers. They separated after issuance of the policy, assuming different residences. The wife, injured while a motorcycle passenger, sought and was refused UM benefits. The court, parsing the same policy language and structure as are here involved, concluded that "in a rather complicated way," (id. at 270, 742 P.2d at 281), the policy did indeed limit UM protection to a spouse resident in her husband's household at the time of the accident. Noting further that, as here, the wife was entitled to the coverage when the policy was issued and that premiums for that coverage had been paid, the court observed that "[t]he result of the definitional section of the policy when applied to the coverage clause of the uninsured motorist section was to take from *351 Tina [the wife] coverage that she had when the policy was issued." Ibid. It concluded that application of the definitional clause
... undoubtedly deprives Tina of coverage that was once hers, coverage for which a premium was computed and charged, and coverage which, in the absence of information to the contrary, she reasonably might have expected to continue so long as the premium . .. was paid. In our view this termination of coverage is the type of unexpected result that defeats the reasonable expectations of the insured. [Id. at 273-274, 742 P.2d at 284-285]
In so applying the reasonable expectation doctrine, the Arizona court relied to a considerable degree on the declaration-page identification of immediate family-member drivers. Noting that because the extent of coverage varies as between named insureds and omnibus insureds and because the insured "naturally would wish to provide coverage ... [for] his or her spouse, children, and other dependent relatives" id. at 270, 742 P.2d at 281, the court construed the listing on the declaration page of family-member drivers as the insured's acceptance of a perceived opportunity to obtain for those drivers all the protections of the named insured. Id. at 270, 742 P.2d at 281. We are in complete accord with these views for the reasons so expressed.
The summary judgment dismissing the complaint is reversed and we remand to the trial court for further proceedings consistent with this opinion.
NOTES
[1] Liability coverage was $250,000 per person and $500,000 per accident, uninsured motorist coverage was $100,000 and $300,000, and property damage to the vehicle was actual cash value with a $500 deductible.