**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2172-18T3

ELMITA LOUIS, Administratrix ad
Prosequendum of the ESTATE OF
JEVENS JOSEPH and the ESTATE
OF JEVENA JOSEPH and ELMITA
LOUIS, individually, and JOSNER
JOSEPH, individually,

     Plaintiffs,

v.

CITY OF NEWARK, NAYYAR
AHMED, and SH SERVICES, LLC,

     Defendants.

_____

ANGEL WILLIAMS, Administratrix
ad Prosequendum of the ESTATE OF
NAZEER BLACKSTON, ANGEL
WILLIAMS, Administratrix ad
Prosequendum of the ESTATE OF
SHELTON ONEAL FREEMAN,
ANGEL WILLIAMS, Administratrix
ad Prosequendum of the ESTATE OF
ANGELICA WILLIAMS, ANGEL
WILLIAMS, Guardian of minor TALIL
FREEMAN, and ANGEL WILLIAMS,
individually,

Plaintiffs,

v.

CITY OF NEWARK, NAYYAR
AHMED, SH SERVICES, LLC, NEW
LIFE INVESTMENT, LLC, SHAHEER
WILLIAMS, 31 BROOKDALE, LLC,
and CHARLOTTE OVERY,

Defendants.
_____

NAYYAR AHMED,

Plaintiff-Respondent,

v.

KB INSURANCE LTD., US BRANCH,
f/k/a THE LEADING INSURANCE
GROUP,

Defendant-Appellant,

and

CITY OF NEWARK, ELMITA LOUIS,
Administratrix ad Prosequendum of
the ESTATE OF JEVENS JOSEPH and
the ESTATE OF JEVENA JOSEPH,
ELMITA LOUIS, individual,
JOSNER JOSEPH, individually,
ANGEL WILLIAMS, Administratrix
ad Prosequendum of the ESTATE OF
NAZEER BLACKSTON, ANGEL
WILLIAMS, Administratrix ad
Prosequendum of the ESTATE OF

A-2172-18T3

SHELTON ONEAL FREEMAN,
ANGEL WILLIAMS, Administratrix
ad Prosequendum of the ESTATE OF
ANGELICA WILLIAMS, ANGEL
WILLIAMS, Guardian of minor TALIL
FREEMAN, and ANGEL WILLIAMS,
individually,

 Defendants.

_____

   Argued September 10, 2019 – Decided September 26, 2019

   Before Judges Ostrer and Vernoia.

   On appeal from an interlocutory order of the Superior
   Court of New Jersey, Law Division, Essex County,
   Docket Nos. L-4553-14, L-5028-14 and L-2770-18.

   Jaclyn M. SchianodiCola argued the cause for appellant
   (The Chartwell Law Offices, LLP, attorneys; Jaclyn M.
   SchianodiCola, on the briefs).

   Donna Russo argued the cause for respondent (Russo &
   Kieck, attorneys; Donna Russo, on the brief).

PER CURIAM

  The sole question in this insurance coverage case, which we consider after

granting leave to appeal, is whether the "businessowners policy" that Kookmin

Best Insurance Company, Ltd. (KBIC) issued to Nayyar Ahmed limited

coverage for bodily injury liability to $1 million per occurrence. A fire at

Ahmed's insured apartment building killed multiple occupants. The decedents'

estates and other survivors sued Ahmed, the City of Newark, and others. Ahmed eventually filed a declaratory judgment action, seeking an order that the policy provided $2 million in coverage. He relies on language in the declarations page and his reasonable expectations of coverage. The trial court agreed with the insured and, on cross-motions for summary judgment, entered judgment in his favor, and against KBIC.

We review de novo the trial court's interpretation of the policy, see Selective Ins. Co. of Am. v. Hudson E. Pain Mgmt. Osteopathic Med. & Physical Therapy, 210 N.J. 597, 605 (2012), and its summary judgment order, Templo Fuente de Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 224 N.J. 189, 199 (2016).

We are guided by well-established rules of construction. "If the plain language of the policy is unambiguous, we will not 'engage in a strained construction to support the imposition of liability' or write a better policy for the insured than the one purchased." Templo Fuente, 224 N.J. at 200 (quoting Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 273 (2001)). We construe ambiguous provisions in favor of the insured, but that rule applies "[o]nly where there is a genuine ambiguity, that is, where the phrasing of the policy is so

4

confusing that the average policyholder cannot make out the boundaries of coverage." Ibid. (citing Hurley, 166 N.J. at 274).

An insurer may create ambiguity by defining coverage one way in a declarations page, and another way in the policy language. See Lehrhoff v. Aetna Cas. & Sur. Co., 271 N.J. Super. 340, 346-47 (App. Div. 1994). A declarations page in a personal lines policy is given "signal importance" because it is tailored to the insured, who may rely on it without reviewing the policy that follows. Id. at 346. Even assuming that rule applies with equal force to a businessowners policy, "separate presentation of an insurance policy's declarations sheet, definition section, and exclusion section" does not necessarily create ambiguity. Oxford Realty Group Cedar v. Travelers Excess and Surplus Lines Co., 229 N.J. 196, 207-08 (2017). The key is whether the declarations page warns or alerts the insured that subsequent policy language modifies or amplifies the coverage and limits in the declarations page. See Zacarias v. Allstate Ins. Co., 168 N.J. 590, 602-03 (2001) (rejecting reliance on declarations page where it alerted the insured that the coverage and liability limits were subject to subsequent policy provisions); Lehrhoff, 271 N.J. Super. at 347 (noting that "the declaration page cannot be contradicted by the policy's boilerplate unless the declaration page itself clearly so warns the insured").

The declarations page in Ahmed's policy lists the "Limits of Insurance" for four separate categories of policy coverage, including the "Liability and Medical Expense" coverage that pertains to the fire victims' claims.

|  | Limits of Insurance |
| --- | --- |
| Liability and Medical Expenses / General Aggregate | $1,000,000 / $2,000,000 |
| Medical Expenses | $5,000 Per person |
| Products / Completed Operations Aggregate | $2,000,000 |
| Fire Legal Liability | $50,000 Any one fire or explosion |

Ahmed highlights that the declarations page does not expressly limit "Liability and Medical Expenses" coverage to $1,000,000 "per occurrence." By contrast, "Fire Legal Liability" coverage is limited to "any one fire or explosion." Also, the declarations page lists other forms of coverage in terms of "per occurrence" limits, such as coverage for employee dishonesty, and outdoor signs, although Ahmed did not purchase those coverages. Ahmed essentially argues that if the insurer meant to limit the liability coverage to "per occurrence" it should have said so. He contends the coverage for the multiple deaths and injuries was an "aggregate" of $2,000,000. He does not say what he understood the $1,000,000 limit to cover, if not each occurrence.

However, the above-quoted policy coverages and limits were preceded by an explicit warning, referring the insured to two provisions of the policy:

> Except for Fire Legal Liability, each paid claim for the following liability coverages reduces the amount of insurance we provide during the applicable annual period. Please refer to Paragraph D.4 of the Businessowners Liability Coverage Form or Section II-Liability in the Businessowners Coverage Form and any attached endorsements.

These referenced provisions clarify that the policy imposed a $1,000,000 per occurrence limit. "Section II – Liability" states that the insurer would cover liability for bodily injury "[b]ut . . . [t]he amount we will pay for damages is limited as described in Paragraph D – Liability and Medical Expenses Limits of Insurance . . . ." In turn, Paragraph D expressly explains that the $1,000,000 of "Liability and Medical Expenses" coverage was "per occurrence," and the $2,000,000 of "General Aggregate" coverage was the total amount of coverage that the policy provided for all occurrences in a single year. Paragraph D begins by explaining that the "Liability and Medical Expenses Limits" apply regardless of the number of claimants:

> D.  Liability And Medical Expenses Limits Of Insurance
>
> 1.  The Limits of Insurance of Section II – Liability shown in the Declarations and the

rules below fix the most we will pay regardless of the number of:

    a.    Insureds;

    b.    Claims made or "suits" brought; or

    c.    Persons or organizations making claims or bringing "suits".

The policy then goes on to introduce the concept that the $1,000,000 limit of "Liability and Medical Expenses" set forth on the declarations page is the per occurrence limit:

    2.    The most we will pay for the sum of all damages because of all:

    a.    "Bodily Injury", "property damage" and medical expenses <u>arising out of any one "occurrence"</u>; and

    b.    "Personal and advertising injury" sustained by any one person or organization;

is the Liability and Medical Expenses limit shown in the Declarations.

[(Emphasis added).]

Paragraph 4 then explains that the total amount the insurer will pay for liability and medical expenses in a policy year is $2,000,000 – "twice the Liability and Medical Expense limit" of $1,000,000.

4.    Aggregate Limits

The most we will pay for:

. . . .

b.    All:

(1)    "Bodily injury" or "property damage" . . .

(2)    Plus medical expenses;

(3)    Plus all "personal and advertising injury" caused by offenses committed;

is twice the Liability and Medical Expenses limit.

In sum, although the declarations page did not expressly state that the $1,000,000 limit of "Liability and Medical Expenses" coverage was a "per occurrence" limit, and that the $2,000,000 figure was an aggregate annual coverage limit, the policy language did so state. And, the declarations page directed the insured to that policy language. Therefore, we are obliged to enforce the policy as written.

We also reject Ahmed's argument that we should find $2,000,000 in coverage for the fire because that was his "reasonable expectation" grounded in the declarations page. The reasonable expectations doctrine is "less applicable

9

to commercial contracts" of insurance.  Oxford Realty, 229 N.J. at 208.  Even assuming the doctrine applies with full force to Ahmed's businessowners policy, Ahmed failed to establish that he had a reasonable expectation of $2,000,000 in coverage for a single occurrence.

"The expectations of coverage must be real . . . [and] the expectations must be 'objectively reasonable.'"  Abboud v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 450 N.J. Super. 400, 410 (App. Div. 2017) (quoting Templo Fuente, 224 N.J. at 210).  "In assessing whether the expectations are objectively reasonable, a court will consider communications regarding the coverage between the insured or its broker and the insurer or its agent that relate to the insured's expectations."  Ibid.

Notably, Ahmed provides no certification presenting his expectations of coverage.  Rather, the record includes his application for the insurance policy, which sought $1,000,000 of coverage for "Each Occurrence" and $2,000,000 of "General Aggregate" coverage.[1]  If anything, the evidence reflects that Ahmed got what he expected.

---

[1]  We reject Ahmed's argument that his application was inadmissible hearsay. Based on a KBIC employee's certification, the application was kept in the usual course of business, see N.J.R.E. 803(c)(6); Ahmed's statements within the application are statements of a party-opponent, see N.J.R.E. 803(b)(1); and the

Reversed and remanded.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

---

KBIC employee asserted upon personal knowledge and her review of business records, that KBIC issued the policy in response to Ahmed's application.

A-2172-18T3