**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3019-24

MICHAEL SCOTT,

    Plaintiff-Appellant,

v.

FALLON SNYDER,

    Defendant,

and

ALLSTATE NEW JERSEY
PROPERTY AND CASUALTY
INSURANCE COMPANY,

    Defendant-Respondent.

_____

Argued January 21, 2026 – Decided February 3, 2026

Before Judges Firko and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Atlantic County, Docket No. L-1968-24.

Richard J. Albuquerque argued the cause for appellant (D'Arcy Johnson Day, attorneys; Richard J. Albuquerque and Dominic DePamphilis, on the briefs).

John C. Prindiville (John C. Prindiville, PA) argued the cause for respondent.

Sherry L. Foley argued the cause for amicus curiae New Jersey Association for Justice (Foley & Foley, attorneys; Sherry L. Foley and Timothy J. Foley, of counsel and on the brief).

PER CURIAM

Plaintiff Michael Scott appeals from a May 7, 2025 order granting defendant Allstate New Jersey Property and Casualty Insurance Company's (Allstate) motion for summary judgment, dismissing his claim for underinsured motorist (UIM) coverage, and denying his cross-motion for summary judgment. We granted leave for New Jersey Association for Justice to appear as amicus curiae. We affirm substantially for the reasons set forth in Judge Sarah Beth Johnson's well-reasoned written opinion.

I.

We summarize the facts in the light most favorable to plaintiff. See Brill v. Guardian Life Ins. Co. of Am., 142 N.J. 520, 540 (1995). On June 10, 2023, plaintiff was operating a 2016 Jeep Patriot (the Jeep) registered to his girlfriend, Katie Opfer, when he was involved in a motor vehicle accident with a vehicle operated by defendant Fallon Snyder. The Jeep was insured under an automobile insurance policy issued by Allstate to Opfer as the only "named

insured" for the effective period April 22, 2023, through October 22, 2023 (the policy). Snyder's vehicle was insured under a policy of automobile insurance that afforded third-party liability coverage subject to a limit of liability of $50,000 per person.

At the time of the accident, plaintiff and Opfer lived together at the address listed on the "[r]enewal auto policy declarations" (the policy declarations) of the policy. They were not married, joined in a civil union, or related. Plaintiff is included as a "listed driver" on the policy. The policy also affords coverage in connection with a second vehicle registered to Opfer identified as a 2021 Toyota Highlander.

The policy declarations include a section titled, "[c]overage detail for [the Jeep]," which states the policy affords "[u]ninsured [m]otorists [i]nsurance" coverage in the amount of "$100,000 each person" for bodily injury. Allstate charged a premium of $43.79 per vehicle for that coverage.

Under "[r]ating information" applicable to the Jeep, the policy declarations state: "[o]wns residence[,] [y]our rate reflects that you are a homeowner[, and] [t]he rating information for this vehicle is: married male age [thirty-seven]." The "[c]overage detail" section of the policy declarations

A-3019-24

applicable to the 2021 Toyota Highlander is identical, except it states, "[t]he rating information for this vehicle is: married female age [thirty-five]."

The policy declarations include a section titled "New Jersey required communications" that states:

> The following [n]otice is regarding [u]ninsured [m]otorists [i]nsurance, which includes uninsured [(UM)] and [UIM] [c]overage:
>
> NOTICE: The availability and limits of [UM] and [UIM] coverage and other coverages of the insurance [p]olicy may be reduced or excluded by the provisions of the [i]nsurance [p]olicy and [p]olicy [e]ndorsements and you are urged to read them in their entirety. <u>Your coverages may have been changed by these provisions</u>.

The uninsured motorists coverage part (UM coverage part) of the policy provides, in relevant part:

> The following endorsement changes your policy. Please read this document carefully and keep it with your policy.
>
> . . . .
>
> General [s]tatement [o]f [c]overage
>
> If a premium is shown on the [p]olicy [d]eclarations for [u]ninsured [m]otorists [i]nsurance, we will pay damages which an insured person is legally entitled to recover from the owner or operator of an uninsured auto or underinsured auto because of:

1. bodily injury sustained by an insured person and caused by an accident;

. . . .

The owner's or operator's liability for these damages must arise out of the ownership, maintenance[,] or use of an uninsured auto or underinsured auto. We will pay damages under this coverage arising out of an accident with an underinsured auto only after the limits of liability under any applicable liability . . . policies have been exhausted by payment of judgments or settlements.

. . . .

Additional [d]efinitions [f]or [u]ninsured [m]otorists [i]nsurance

1. Insured Auto means an auto you own which is described on the [p]olicy [d]eclarations and for which a premium is shown for [u]ninsured [m]otorists [i]nsurance.

. . . .

2. Insured [p]erson(s) means:

a) you[1] and any resident relative or civil union partner under New Jersey law.

b) any other person while in, on, getting into or out of, or getting on or off, an insured auto with your permission.

---

[1] The policy provides "[y]ou . . . means the policyholder(s) listed as [n]amed [i]nsureds on the [p]olicy [d]eclarations and the resident spouse including civil union partner under New Jersey law of any such [n]amed [i]nsured."

. . . .

6. Underinsured [a]uto means a land motor vehicle . . . to which a liability . . . policy applies at the time of the accident, but its limit for liability is less than the limit of liability for this coverage[.]

. . . .

Limits of [l]iability

For an insured person who is the named insured, resident spouse[,] or civil union partner of the named insured on this policy and any resident relative who is not the named insured, spouse[,] or civil union partner of a named insured on another insurance policy, and who is in, on, getting into or out of an insured auto or non-owned auto, the [u]ninsured [m]otorists [i]nsurance-[b]odily [i]njury limit shown on the [p]olicy [d]eclarations for:

1. "each person" is the maximum that we will pay for damages arising out of bodily injury to one person in any one motor vehicle accident, including all damages sustained by anyone else as a result of that bodily injury.

. . . .

For any other insured person, the limits of liability for this coverage will be the mandatory minimum limits for this coverage specified by the laws of New Jersey.[2]

---

[2] The mandatory minimum limits for UIM coverage applicable to policies issued or renewed after January 1, 2023, are $25,000 per person and $50,000 per accident. N.J.S.A. 17:28-1.1(a)(1)-(2).

## II.

On September 25, 2024, plaintiff filed a complaint against Snyder alleging "serious personal injuries" caused by the motor vehicle accident, and against Allstate "seeking [UIM] benefits." On January 29, 2025, Allstate moved for summary judgment contending plaintiff is not entitled to UIM benefits under the policy. On February 13, 2025, plaintiff dismissed his claims against Snyder with prejudice in exchange for Snyder's $50,000 policy limit. On February 18, plaintiff cross-moved for summary judgment.

On March 7, 2025, after hearing oral argument, Judge Johnson entered an order granting Allstate's motion for summary judgment and denying plaintiff's cross-motion supported by a written opinion. She found the "policy documents at issue" were not ambiguous. The policy "include[s] a warning in the [policy] declaration[s] that UIM coverage may be reduced or excluded by provisions in the insurance policy and policy endorsements."

The judge determined the limitation of liability provision of the UM coverage part "indicates that, under the undisputed record, the [UIM] coverage is limited to that specified by statute." She concluded because "the $50,000 [p]laintiff recovered from [Snyder was] greater than the $25,000 [statutory

minimum limit of liability], [Snyder] was not underinsured, and [p]laintiff may not recover any amount from Allstate."

The judge concluded that our decision in Motil v. Wausau Underwriters Ins. Co, 478 N.J. Super. 328 (App. Div. 2024), is distinguishable for several reasons. She determined, unlike the insurance policy in Motil, the declarations in Opfer's policy contain a notice that "directs the insured [to] review the policy language" of the UIM coverage part. The judge noted the portion of the notice that states "'[y]our coverages may have been changed by these provision[s]' is the only underlined sentence on the page, and one of just two underlined sentences in the entire [policy] declaration[s] section."

The judge concluded "the limitation o[f] liability section of Opfer's policy is significantly clearer than the one from Motil." Specifically, it extends UIM coverage to "an insured person who is the named insured, resident spouse[,] or civil union partner of the named insured . . . and any resident relative." "In this matter, the only person named under the heading '[n]amed [i]nsured' in the [policy] declaration[s] is Opfer herself." "Plaintiff is neither Opfer's resident spouse nor her civil union partner" and he "is not [a] resident relative." Instead, plaintiff is "any other [insured] person" for purposes of the UIM coverage part of the policy and "thus subject to the step-down provision."

The judge "disagree[d] with the contention that Allstate's designation of [p]laintiff as a 'listed driver' and its charging the same UIM premium for both vehicles renders the policy . . . ambiguous." She reasoned that conclusion was "consistent with . . . Motil" because in that case, "it was the combination of listing the plaintiff as a covered driver, charging the car involved in the accident the same UIM premium, and failing to warn of the step-down provision that compelled the court to find . . . ambiguity." This appeal followed.

## III.

On appeal, plaintiff argues: (1) the judge incorrectly determined he was not entitled to UIM coverage because "[t]he plain language of the . . . policy extends UIM coverage to [p]laintiff"; (2) the judge "err[ed] by not following [Motil] which extends UIM coverage to listed and covered drivers identified on the applicable automobile insurance declarations page"; and (3) he had a reasonable expectation of coverage "because the language of the . . . policy, including the subject step-down provision, is ambiguous when compared to the" policy declarations.

Our review of a trial court's grant or denial of a motion for summary judgment is de novo. Samolyk v. Berthe, 251 N.J. 73, 78 (2022). We apply the same standard as the trial court and consider "whether the competent evidential

9

materials presented, when viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill, 142 N.J. at 540. We also "review the interpretation of a contract de novo." Katchen v. Gov't Emps. Ins. Co., 457 N.J. Super. 600, 604 (App. Div. 2019).

"We give special scrutiny to insurance contracts because of the stark imbalance between insurance companies and insureds in their respective understanding of the terms and conditions of insurance policies." Zacarias v. Allstate Ins. Co., 168 N.J. 590, 594 (2001). However, an insurance policy "will be enforced as written when its terms are clear in order that the expectations of the parties will be fulfilled." Norman Int'l, Inc. v. Admiral Ins. Co., 251 N.J. 538, 552 (2022) (quoting Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 525 (2012)). "[T]he plain terms of the contract will be enforced if . . . the provision is not so 'confusing that the average policyholder cannot make out the boundaries of coverage.'" Zacarias, 168 N.J. at 601 (citation omitted).

"In considering the meaning of an insurance policy, we interpret the language 'according to its plain and ordinary meaning.'" Flomerfelt v. Cardiello, 202 N.J. 432, 441 (2010) (quoting Voorhees v. Preferred Mut. Ins. Co., 128 N.J. 165, 175 (1992)). "If the plain language of the policy is unambiguous, we will

'not "engage in a strained construction to support the imposition of liability" or write a better policy for the insured than the one purchased.'" Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 224 N.J. 189, 200 (2016) (quoting Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008)).

A policy provision is deemed ambiguous when it is objectively open to more than one interpretation. See Cadre v. Proassurance Cas. Co., 468 N.J. Super. 246, 258 (App. Div. 2021). Where the terms are ambiguous, "they are construed against the insurer and in favor of the insured, in order to give effect to the insured's reasonable expectations." Ibid. (quoting Flomerfelt, 202 N.J. at 441). "Courts should construe insurance policies against the insurer, consistent with the reasonable expectations of insureds, when those policies are overly complicated, unclear, or written as a trap for the unguarded consumer." Zacarias, 168 N.J. at 604.

Nevertheless, "insureds are [not] relieved of their ordinary duty to review, and to be bound by the terms of, the policy itself." Pizzullo v. N.J. Mfrs. Ins. Co., 196 N.J. 251, 273 (2008). The reasonable expectations of the policyholder govern only where "a close, searching review would not have resolved the ambiguity." Ibid.

A-3019-24

A "step[-]down in coverage has been approved in the setting of eligibility for first-party UIM coverage." Huggins v. Aquilar, 246 N.J. 75, 89 (2021). Indeed, there is no requirement that all limitations and exclusions applicable to a policy of insurance be listed on the declaration page of the policy. That is so because "[a] rule that would require exclusions to appear on the declaration page would result in even more fine print and 'run the risk of making insurance policies more difficult for the average insured to understand.'" Katchen, 457 N.J. Super. at 609 (quoting Morrison v. Am. Int'l Ins. Co. of Am., 381 N.J. Super. 532, 540-41 (App. Div. 2005)).

Based on our de novo review, we are convinced Judge Johnson correctly granted Allstate's motion for summary judgment and denied plaintiff's cross-motion. We add the following brief comments.

The clear terms of the UM coverage part of the policy expressly state the limits of liability applicable to UIM coverage "shown on the [p]olicy [d]eclarations" apply only to "an insured person who is the named insured, resident spouse[,] or civil union partner of the named insured . . . and any resident relative." There is no dispute plaintiff did not fall into any of those categories. Even a cursory review of the UM coverage part of the policy would have alerted plaintiff to this limitation of coverage. The critical language is

contained within the UM coverage part itself; it is not buried in the "boilerplate" of the policy or dependent on terms or definitions located elsewhere in the policy. The relevant policy provisions are "not so confusing that the average policyholder [could not] make out the boundaries of coverage." Zacarias, 168 N.J. at 601 (internal quotation marks omitted).[3]

What is more, the policy declarations expressly notified plaintiff the "availability and limits" of the UIM coverage afforded by the policy were subject to and "may be reduced or excluded by the provisions of the . . . [p]olicy and [p]olicy [e]ndorsements." The notice "urged" plaintiff to read the policy terms "in their entirety" because the "coverages may have been changed by these provisions." Had plaintiff heeded this notice and read the UM coverage part of the policy, it would have been readily apparent he was entitled to only the statutory minimum limits of UIM coverage.

Plaintiff's reliance on Motil is misplaced. In that case, the plaintiff was injured while driving a vehicle owned by her father, which was insured under her father's automobile insurance policy, and kept at an "alternate garaging address" specifically listed on the policy. Motil, 478 N.J. Super. at 333.

---

[3] At oral argument before us, plaintiff conceded the language of the UM coverage part is not ambiguous.

Plaintiff, who was listed as a covered driver under her father's policy, resided at that alternate garaging address. The policy included UIM coverage with a "$100,000 bodily injury coverage limit." Ibid.

The UIM coverage part of the policy stated, "if the 'insured' is not a . . . 'family member' under this policy" the "maximum limit of liability" would be "$15,000 per person . . . for 'bodily injury.'" Id. at 334. The definition of "family member" was located in a different section of the policy. Id. at 333. "Family member" was defined as "a person related to you by blood, marriage[,] or adoption who is a resident of your household." Ibid. at 333.

Under the facts and circumstances of that case, we determined the policy was ambiguous. We reasoned "[n]either the declaration[s] nor the policy provided a distinction of UIM coverage for a 'covered auto' with an identified alternate garaging address." Id. at 340. We determined the policy declarations did "not alert [the insured]–a covered driver operating a vehicle garaged at a separately identified alternate address–that she did not qualify as a 'family member' who was a 'resident of [the named insured's] household.'" Ibid.

We concluded the policy did not alert the insured that a "covered driver" residing at a designated alternate garaging address "was subject to the step-down in coverage." Ibid. "Specifically, the policy could have clarified that the only

14

qualifying 'household' was the residence of the named insured and an identified alternate address was excluded." Ibid.

Unlike in Motil, the applicable terms of the UM coverage part in this case are clear and unambiguous. There is no question plaintiff was not Opfer's spouse, civil union partner, or relative. In addition, all of the relevant policy terms were included in the UM coverage part. There was no need to review other sections of the policy to determine plaintiff was not entitled to UIM coverage. Lastly, the policy includes a notice in the policy declarations that the limits and applicability of the UIM coverage were subject to and "may have been changed by" the provisions of the policy and endorsements and urged plaintiff to "read them in their entirety."

Plaintiff's reliance on Lehrhoff v. Aetna Cas. & Sur. Co., 271 N.J. Super. 340 (App. Div. 1994), is also unavailing. In that case, the plaintiff was the child of the named insured and was injured when he was struck while crossing the street by a "bicyclist [who] had been forced into his path by an unidentified automobile" in California. Lehroff, 271 N.J. Super. at 343. He sought UM coverage under his father's policy, which afforded UM coverage for "any family member." Id. at 344. When the insurance policy was issued, the plaintiff was a

resident of his father's household but moved to California during the policy period. Id. at 343.

However, the definition of "family member" was not included in the UM coverage part of the policy. Id. at 345. Instead, "some pages away from the [UM coverage part] there [was] a general definitions section to which [the UM coverage part did] not refer by cross-reference or otherwise which limit[ed] the meaning of 'family member' for purposes of the [UM coverage part]." Ibid. We noted only "[a] careful scrutiny of the full text of the general definition section instructs that" the term "family member" was limited to "a resident of [the named insured's] household." Ibid.

We determined the "reasonable expectations of coverage raised by the declaration page cannot be contradicted by the policy's boilerplate unless the declaration page itself clearly so warns the insured." Id. at 347. Under the circumstances of that case, we were "convinced that giving effect to the family-member limitation in the general definition section would unfairly defeat the insured's reasonable expectations." Id. at 350. We reasoned:

> When [the insured] took the car to California he and his family had every reason to believe that both driver and vehicle were fully covered by all the protections of the insurance policy. The declaration page gave them that reasonable belief. The text of the UM coverage supported that belief. Only a full, careful,

16

sophisticated, and experienced reading of the full policy would have informed them otherwise.

[Ibid.]

In this case, as previously discussed, the relevant policy terms are set forth clearly in the UM coverage part itself and are not "contradicted by the policy's boilerplate." Id. at 347. Also, the policy declarations include an express notice that the applicability and limits of the UM coverage part are subject to and "may have been changed by" the "provisions of the [p]olicy and [p]olicy endorsements."

Plaintiff's claim that he should be entitled to UIM coverage because Allstate charged the same premium for both vehicles insured under the policy is not persuasive. The availability and scope of coverage afforded by the policy are determined by the terms and conditions of the policy, not by the premium charged. Where, as here, the terms and conditions of the policy are clear, the "[policy] will be enforced as written." Norman, 251 N.J. at 552 (citation omitted).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Hanley

Clerk of the Appellate Division