**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1524-23

ESTATE OF MILES C. BRACKIN
by DEBORAH A. BUTZBACH,
General Administratrix and
Administratrix Ad Prosquendum,
DEBORAH A. BUTZBACH,
individually, and PHILLIP S.
BRACKIN, JR., individually,

     Plaintiffs-Appellants,

v.

PHILLIP SNOWDEN BRACKIN, III[1] and
PRIVILEGE UNDERWRITERS, INC.,

     Defendants-Respondents.

_____

Argued January 23, 2025 – Decided February 11, 2025

Before Judges Mayer and Rose.

On appeal from the Superior Court of New Jersey, Law Division, Mercer County, Docket No. L-2215-22.

_____

[1] Incorrectly pled as Philip Snowden Brackin III.

C. Robert Luthman argued the cause for appellants (Weir Attorneys, attorneys; C. Robert Luthman, of counsel and on the briefs).

Ethan Price-Livingston (Cozen O'Connor) of the New York Bar, admitted pro hac vice, argued the cause for respondent Privilege Underwriters, Inc. (Melissa F. Brill and Ethan Price-Livingston, attorneys; Melissa F. Brill and Ethan Price-Livingston, on the brief).

PER CURIAM

Plaintiffs Estate of Miles C. Brackin, Dr. Deborah A. Butzbach (Miles' mother), and Dr. Phillip S. Brackin Jr. (Miles' father)[2] appeal from a May 3, 2023 order dismissing their complaint against defendant Privilege Underwriters, Inc.[3] pursuant to Rule 4:6-2(e). We affirm.

I.

This case arises from a fatal one-car accident involving Miles and Phillip, who are Drs. Butzbach and Brackin's sons. On August 20, 2021, Phillip, the older son, drove his mother's GMC Yukon while Miles, the younger son, sat in

---

[2] Decedent Miles C. Brackin and defendant Phillip Snowden Brackin III are brothers. To avoid confusion, we refer to them by their first names. No disrespect is intended. Because plaintiffs settled their claims against Phillip, he is not participating on appeal.

[3] Drs. Butzbach and Brackin purchased an excess insurance policy from Privilege Underwriters Reciprocal Exchange (PURE), not Privilege Underwriters, Inc. as identified in the caption.

A-1524-23

the front passenger seat.  The Yukon ran off the road, overturned and collided with a concrete wall.  Tragically, Miles died from the injuries he sustained in the accident.

Dr. Butzbach, the registered owner of the Yukon, insured the vehicle under a primary automobile policy issued by USAA.  Additionally, Drs. Butzbach and Brackin have an excess insurance policy from PURE.  We recite the relevant provisions from the USAA and PURE insurance policies governing this appeal.

A.    USAA Policy

The USAA policy issued to Dr. Butzbach included automobile liability and underinsured motorist (UIM) coverage.  Under the liability provision, USAA agreed to "pay compensatory damages for [bodily injury][4] or [property damage] for which any covered person becomes legally liable because of an auto accident."  The term "covered person" included "any family member."  The policy defined "family member" as "a person related to [the policyholder] by blood, marriage, registered civil union or adoption who resides primarily in [the

---

[4]  The underlined language appears in bold font in the actual text of the USAA and PURE insurance policies.

A-1524-23

policyholder's] household." The USAA policy provided $500,000 of liability coverage per person injured, up to $1,000,000 per accident.

Regarding UIM coverage, USAA agreed to pay:

> compensatory damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle or underinsured motor vehicle because of:
>
> 1. [Bodily injury] sustained by a covered person and caused by an auto accident; and
>
> 2. [Property damage] caused by an auto accident.

USAA defines an "underinsured motor vehicle" as

> a land motor vehicle or trailer of any type to which one or more liability . . . policies apply, but the sum of the limits of liability for [bodily injury] or [property damage] under all such . . . policies is less than the sum of the applicable limits of liability for [UIM] [c]overage under this policy and all other policies affording [UIM] [c]overage to the covered person.

USAA expressly excluded from UIM coverage "any vehicle . . . [o]wned by or furnished or available for the regular use of [the policyholder] or any family member."

B.    PURE Policy

PURE's insurance policy provided excess liability and UIM coverage. Its liability provision provided coverage up to $5,000,000 for

4

damages that an insured is legally obligated to pay as a result of property damage or personal injury caused by an occurrence to which this coverage applies:

    a) In excess of the underlying insurance or the minimum required underlying limits, whichever is greater; or

    b) From the first dollar where coverage provided by [the] required underlying insurance does not apply or underlying insurance is not required.

PURE expressly excluded from excess liability coverage any damages for "personal injury to [the policyholder] or an insured under this policy." PURE's policy defined an "insured" as the policyholder or "a family member." Under PURE's excess policy, a "family member" is someone who "lives in [the policyholder's] household and is related to [the policyholder] by blood, marriage, registered domestic partnership . . . , or adoption."

PURE's excess UIM coverage provided up to $1,000,000 in "damages for bodily injury an insured is legally entitled to receive from the owner or operator of an uninsured or underinsured auto." The excess UIM coverage specifically "follow[ed] form," providing PURE would "cover damages to the extent they are both covered by the required underlying insurance and not excluded by this policy."

A-1524-23

As a result of Miles' death, USAA paid its liability coverage limit in the amount of $500,000 to resolve plaintiffs' negligence claims against Phillip. PURE declined to provide any excess coverage for the accident.

Plaintiffs filed suit against Phillip and PURE. As to their claims against PURE, plaintiffs sought a declaration that they were entitled to liability and UIM coverage under PURE's excess policy.

PURE filed a motion to dismiss under Rule 4:6-2(e) for failure to state a claim. PURE argued the "injury to an insured" exclusion in its policy, also known as the intrafamily exclusion, barred excess liability coverage. Additionally, PURE claimed the Yukon, by definition, was not an underinsured motor vehicle and, therefore, plaintiffs were not entitled to UIM excess coverage.

The motion judge heard argument on PURE's dismissal motion. In a May 3, 2023 decision placed on the record, the judge granted the motion and dismissed plaintiffs' complaint.

The motion judge concluded plaintiffs were not entitled to excess liability coverage because their claims stemmed from "personal injury to . . . an insured." Since an "insured" included the policyholder's family members, and Miles was "the son of the named insured," the judge determined Miles "constitute[d] an

insured under the [PURE] policy as a matter of law and the [policy's] injury to an insured exclusion bar[red] coverage."

The motion judge rejected plaintiffs' argument that PURE's "injury to an insured" exclusion was unenforceable because it violated public policy. In support of their argument, plaintiffs relied on an unpublished case, Dela Vega v. Travelers Ins. Co., No. A-2272-19 (App. Div. May 6, 2022).[5] The judge found Dela Vega inapposite because that case involved an exclusion contained in a primary automobile insurance policy, which was statutorily required for all New Jersey drivers and plaintiffs' case involved a non-compulsory excess insurance policy. The judge further concluded the "injury to an insured" exclusion contained "no ambiguity, inconsistency, or contradiction between the [PURE policy] declaration sheet and the body of the policy." Thus, the judge held plaintiffs were not entitled to excess liability coverage under PURE's policy.

Additionally, the motion judge found plaintiffs were not entitled to excess UIM coverage under PURE's policy because the Yukon was not an underinsured

---

[5] Rule 1:36-3 generally prohibits citation to unpublished cases because unpublished cases lack precedential value. However, citation to an unpublished case is permissible where relevant to the procedural history of a matter. See Pressler & Verniero, Current N.J. Court Rules, cmt. 2 on R. 1:36-3 (2025); see also Zahl v. Eastland, 465 N.J. Super. 79, 86 n.1 (App. Div. 2020) ("Although citing an unpublished opinion is generally forbidden, we do so here to provide a full understanding of the issues presented.").

motor vehicle. As the judge stated, PURE's policy "follow[ed] form to the USAA policy" and USAA "expressly exclude[d]" any vehicle "[o]wned by or furnished or available for the regular use of [the policyholder] or any family member" from the definition of an underinsured motor vehicle. The judge explained the term "family member" under USAA's policy included any "person related to [the policyholder] by blood [or] marriage, who resides primarily in [the policyholder's] household." The judge found the Yukon "was owned by the named insured [Dr.] Butzbach and was furnished for the use of a family member [d]efendant Phillip." Relying on the UIM provision in USAA's policy and his factual findings, the judge held plaintiffs were not entitled to UIM coverage under USAA's policy. Because PURE's policy followed form to USAA's policy, the judge determined plaintiffs were not entitled to excess UIM coverage from PURE.

On appeal, plaintiffs argue they were entitled to excess liability coverage from PURE because the "injury to insured" exclusion violates public policy. Additionally, plaintiffs claim entitlement to excess UIM coverage because PURE's "follow form" provision created "significant ambiguity" within its policy. We reject plaintiffs' arguments.

A-1524-23

II.

We review de novo a judge's decision on a motion to dismiss a complaint under Rule 4:6-2(e) for failure to state a claim upon which relief may be granted. Baskin v. P.C. Richard & Son, LLC, 246 N.J. 157, 171 (2021) (citing Dimitrakopoulos v. Borrus, Goldin, Foley, Vignuolo, Hyman & Stahl, P.C., 237 N.J. 91, 108 (2019)). The test for determining the adequacy of a pleading under Rule 4:6-2(e) is "whether a cause of action is 'suggested' by the facts." Green v. Morgan Props., 215 N.J. 431, 451-52 (2013) (quoting Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989)).

"At this preliminary stage of the litigation [courts are] not concerned with the ability of plaintiffs to prove [every] allegation contained in the complaint." Printing Mart-Morristown, 116 N.J. at 746. Rather, the court must "examine 'the legal sufficiency of the facts alleged on the face of the complaint,' giving the plaintiff the benefit of 'every reasonable inference of fact.'" Baskin, 246 N.J. at 171 (quoting Dimitrakopoulos, 237 N.J. at 107). The court should search the complaint thoroughly "and with liberality to ascertain whether . . . a cause of action may be gleaned even from an obscure statement of claim, opportunity being given to amend if necessary." Ibid. (quoting Printing Mart-Morristown, 116 N.J. at 746). "Nonetheless, if the complaint states no claim that supports

relief, and discovery will not give rise to such a claim, the action should be dismissed." Dimitrakopoulos, 237 N.J. at 107.

As relevant here, in reviewing a motion to dismiss based on an insurance contract, "a complaint seeking coverage may be dismissed under Rule 4:6-2(e) if the factual allegations . . . do not support a finding that the plaintiff is entitled to coverage under the terms of the insurance policy." AC Ocean Walk, LLC v. Am. Guar. & Liab. Ins. Co., 256 N.J. 294, 311 (2024).

### III.

We first address plaintiffs' claimed entitlement to excess liability coverage from PURE. An interpretation of an insurance policy "turns on a purely legal question" and is subject to de novo review. Pickett ex rel. Est. of Pickett v. Moore's Lounge, 464 N.J. Super. 549, 554-55 (App. Div. 2020). "Thus, we afford no special deference to a 'trial court's interpretation of the law and the legal consequences that flow from established facts.'" Motil v. Wausau Underwriters Ins. Co., 478 N.J. Super. 328, 336 (App. Div.), leave to appeal denied, 258 N.J. 155 (2024) (quoting Sealed Air Corp. v. Royal Indem. Co., 404 N.J. Super. 363, 374 (App. Div. 2008)).

An insurance policy "will be enforced as written when its terms are clear [such] that the expectations of the parties will be fulfilled." Flomerfelt v.

<u>Cardiello</u>, 202 N.J. 432, 441 (2010). The language of an insurance policy is interpreted "according to its plain and ordinary meaning." <u>Ibid.</u> (quoting <u>Voorhees v. Preferred Mut. Ins. Co.</u>, 128 N.J. 165, 175 (1992)). If those terms are unambiguous, "courts should not write for the insured a better policy of insurance than the one purchased." <u>Zacarias v. Allstate Ins. Co.</u>, 168 N.J. 590, 595 (2001) (quoting <u>Gibson v. Callaghan</u>, 158 N.J. 662, 670 (1999)). If terms are ambiguous, "they are construed against the insurer and in favor of the insured, in order to give effect to the insured's reasonable expectations." <u>Flomerfelt</u>, 202 N.J. at 441.

"[O]ur courts will enforce exclusionary clauses if specific, plain, clear, prominent, and not contrary to public policy, notwithstanding that exclusions generally must be narrowly construed, and the insurer bears the burden to demonstrate they apply." <u>Pickett</u>, 464 N.J. Super. at 555 (quoting <u>Abboud v. Nat'l Union Fire Ins. Co.</u>, 450 N.J. Super. 400, 407 (App. Div. 2017) (internal quotation marks omitted)).

Here, PURE unequivocally excluded "personal injury to [the policyholder] or an insured" from excess liability coverage. PURE's definition of an insured included family members. It is undisputed Miles and Phillip were family members on the date of the accident because they lived in Dr. Butzbach's

11

household. Additionally, Miles and Phillip are related by blood to Dr. Butzbach. Thus, Miles and Phillip met the clear, plain, and unambiguous definition of family member under PURE's "injury to an insured" exclusion and were not entitled to excess liability coverage.

Before us, plaintiffs repeat their argument that PURE's "injury to an insured" exclusion policy violates public policy. However, plaintiffs base their appellate argument on the same unpublished case presented to the motion judge. Unpublished cases lack precedential authority, particularly where there is a published Supreme Court or Appellate Division case rejecting the identical argument.

The same arguments advanced by plaintiffs were raised in Weitz v. Allstate Ins. Co., 273 N.J. Super. 548, 549 (App. Div. 1994). In that case, we upheld an "injury to an insured" exclusion in an excess insurance policy the same as the exclusion contained in PURE's policy.

In Weitz, the plaintiff sued her husband under his excess policy for any awarded damages above the coverage limit in the husband's automobile insurance policy. Ibid. The husband's excess policy, issued by the defendant Allstate Insurance Company, contained an "injury to an insured" exclusion, precluding coverage for "relatives living in [the policy holder's] household."

Ibid.  The motion judge dismissed the plaintiff's complaint against the defendant, finding a "distinction between an automobile policy [and] an [excess] policy. . . .  The former is mandated by and subject to strict statutory regulation . . . .  [An excess] policy is not subject to such regulation.  It is additional coverage not required for the purpose of auto insurance."  Id. at 550.

We affirmed the dismissal of the plaintiff's complaint, stating there was "nothing ambiguous about the policy's exclusion provision" because the plaintiff was a member of the policyholder's household.  Ibid.  We distinguished an excess policy from an automobile insurance policy because excess policies are not "bought by everyone."  Id. at 551.  We further stated the exclusion in the defendant's excess policy was not ambiguous because the defined terms in the exclusion provision were "in bold print."  Ibid.  Additionally, we explained "an exclusion is not rendered ambiguous merely because the definitions appear on one page and the exclusions appear on another."  Ibid.  Because the Legislature did not require automobile insureds to purchase excess policies, we concluded the plain and unambiguous exclusion in the defendant's excess policy "must be enforced as written."  Id. at 552.

Consistent with well-settled case law, "[i]n the absence of any statutory or substantial public policy requirement to cover liability for an insured's

13

injury," an insurance policy may exclude coverage. Horesh v. State Farm Fire & Cas. Co., 265 N.J. Super. 32, 37 (App. Div. 1993). Because there is no statute compelling New Jersey residents to obtain excess liability coverage, plaintiffs assert PURE's "injury to an insured" exclusion violates public policy. However, the public policy exception is not without limit.

> "Public policy" is no magic touchstone. This State has more than one public policy. Another and countervailing public policy favors freedom of contract, in the absence of overriding reasons for depriving the parties of that freedom. Still another public policy favors the enforcement of insurance contracts according to their terms, where the insurance company accepts the premium and reasonably represents or implies that coverage is provided.
>
> [Foley v. Foley, 173 N.J. Super. 256, 259 (App. Div. 1980) (quoting Bertler v. Emps. Ins. of Wausau, 271 N.W.2d 603, 609 (Wis. 1978)).]

Having reviewed the record, we discern no error in the motion judge's dismissal of plaintiffs' complaint. Based on the clear and unambiguous language of PURE's "injury to an insured" exclusion, plaintiffs were not entitled to excess liability coverage. Moreover, plaintiffs failed to proffer any compulsory legal requirement or substantial public policy reason entitling them to such coverage from PURE. We invite plaintiffs to advance their concerns regarding excess

14

insurance policies containing an "injury to an insured" exclusion to the Legislature.

## IV.

We next consider plaintiffs' claimed entitlement to excess UIM coverage under PURE's policy. Plaintiffs argue PURE's UIM provision does not preclude coverage because the "follow form" language created an ambiguity in PURE's policy. Plaintiffs further assert USAA's definition of "underinsured motor vehicle" did not appear on PURE's declaration sheet.

A term in an insurance contract is ambiguous if it is "susceptible to at least two reasonable alternative interpretations." Chubb Custom Ins. Co. v. Prudential Ins. Co. of Am., 195 N.J. 231, 238 (2008). "An insurance policy is not ambiguous merely because two conflicting interpretations of it are suggested by the litigants. Rather, both interpretations must reflect a reasonable reading of the contractual language." Powell v. Alemaz, Inc., 335 N.J. Super. 33, 44 (App. Div. 2000). "Only where there is a genuine ambiguity, that is, 'where the phrasing of the policy is so confusing that the average policyholder cannot make out the boundaries of coverage,' should the reviewing court read the policy in favor of the insured." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins.

A-1524-23

Co. of Pittsburgh, 224 N.J. 189, 200 (2016) (quoting Progressive Cas. Ins. Co. v. Hurley, 166 N.J. 260, 274 (2001)).

Insurance policies must "comport with the reasonable expectations of the insured." Gibson, 158 N.J. at 671. "Courts will enforce only the restrictions and the terms in an insurance contract that are consistent with the objectively reasonable expectations of the average insured." Hurley, 166 N.J. at 274.

"Courts may vindicate the insured's reasonable expectations over the policy's literal meaning 'if the text appears overly technical or contains hidden pitfalls, cannot be understood without employing subtle or legalistic distinctions, is obscured by fine print, or requires strenuous study to comprehend.'" Abboud, 450 N.J. Super. at 409 (quoting Zacarias, 168 N.J. at 601). "Of course, for a policyholder's expectations to govern over the plain language of an insurance contract, his or her expectations must be objectively reasonable." Motil, 478 N.J. Super. at 338 (quoting Cassilli v. Soussou, 408 N.J. Super. 147, 154 (App. Div. 2009)). Policyholders are required to "make such examination as would be reasonable for the average person under the particular circumstances." Harr v. Allstate Ins. Co., 54 N.J. 287, 310 (1969).

Plaintiffs argue PURE's reliance on USAA's definitional exclusion of an underinsured motor vehicle renders PURE's policy ambiguous. "[A]n insured is

chargeable with knowledge of the contents of 'an insurance policy in the absence of fraud or inequitable conduct on the part of the carrier.'" Morrison v. Am. Int'l Ins. Co. of Am., 381 N.J. Super. 532, 542 (App. Div. 2005) (quoting Edwards v. Prudential Prop. & Cas. Co., 357 N.J. Super. 196, 204 (App. Div. 2003)).

Here, plaintiffs did not assert any fraud or inequitable conduct related to their purchase of PURE's excess policy. Nor did plaintiffs claim PURE's agents or representatives led them to believe PURE was providing excess UIM coverage. Further, plaintiffs did not contend they were unable to examine or review the clear and unambiguous coverage exclusions in PURE's policy.

The "follow form" provision in PURE's policy is set forth in bold type in the definitions section. Further, the "follow form" provision is separately delineated from other provisions in PURE's policy and reads:

> Follow Form
>
> We will cover damages to the extent they are both covered by the required underlying insurance and not excluded by this policy. The provisions of this policy supersede and replace similar provisions in the underlying policy. We will not provide broader coverage than the underlying policy. When coverage is provided on a follow form basis and no underlying insurance exists, coverage will be determined as if we had sold the required underlying insurance.

The UIM provision in PURE's policy reads:

17

B. Excess Supplementary Uninsured and Underinsured Motorists Coverage

. . . .

We will pay <u>damages</u> for <u>bodily injury</u> an <u>insured</u> is legally entitled to receive from the owner or operator of an uninsured or underinsured <u>auto</u>. We will only pay those <u>damages</u> in excess of the <u>underlying insurance</u> or the minimum required underlying limits, whichever is greater. The most we will pay as a result of an <u>occurrence</u> is the coverage limit . . . shown on your Declarations. This limit is the most we will pay, regardless of the number of claims, vehicles, or people involved in the <u>occurrence</u>, or vehicles you own.

This coverage only applies for an <u>occurrence</u> during the policy period. This coverage will <u>follow form</u>**.**

The foregoing provisions in PURE's policy are not "so confusing that the average policyholder cannot make out the boundaries of coverage." <u>Hurley</u>, 166 N.J. at 274 (quoting <u>Weedo v. Stone-E-Brick, Inc.</u>, 81 N.J. 233, 247 (1979)). These provisions are not "overly technical," do not contain "hidden pitfalls" buried in fine print, and do not require "strenuous study to comprehend." <u>Zacarias</u>, 168 N.J. at 601. A plain reading of PURE's policy alerts the policyholder that coverage for excess UIM claims applies only if (a) the policyholder's underlying insurance policy covers the UIM claims, and (b) PURE does not otherwise exclude coverage. While plaintiffs may have believed PURE provided UIM coverage despite USAA's clear exclusion of UIM

18

coverage, such a belief would be neither reasonable nor supported by the plain text of PURE's policy. On this record, we are satisfied PURE's "follow form" language is unambiguous and consistent with the reasonable expectations of an average insured.

Plaintiffs hypothetically posit the "follow form" provision allows PURE to deny UIM coverage in an accident involving "any tortfeasor who has liability [coverage] equal to or greater than [USAA's] $500,000 [UIM limit], despite the fact that PURE sold plaintiffs a $1,000,000 UIM policy." However, plaintiffs' hypothetical does not support a departure from the plain language of the policies issued by USAA and PURE. USAA defines "underinsured motor vehicle" as

> a land motor vehicle . . . to which one or more liability . . . policies apply, but the sum of the limits of liability for [bodily injury] or [property damage] under all such . . . policies is less than the sum of the applicable limits of liability for [UIM] [c]overage under this policy and all other policies affording [UIM] [c]overage to the covered person.

In other words, USAA provides UIM coverage if (a) the tortfeasor's liability coverage is less than the insured's UIM coverage under all the insured's policies, and (b) the tortfeasor's vehicle is not excluded from the definition of "underinsured motor vehicle."

19

Because PURE's policy follows form to USAA's policy, PURE provides UIM coverage if (a) the tortfeasor has less than $1,500,000 in liability coverage, (b) USAA does not exclude the tortfeasor's vehicle from the definition of an "underinsured motor vehicle," and (c) PURE does not otherwise exclude coverage.

We are satisfied USAA properly excluded the Yukon from the definition of "underinsured motor vehicle" because Dr. Butzbach is the USAA policyholder, the Yukon was available for Phillip's regular use, and Phillip lived in Dr. Butzbach's household. We decline to rewrite USAA's definition of "underinsured motor vehicle" and ignore the plain language of PURE's "follow form" provision to provide excess UIM coverage under the circumstances.

We also reject plaintiffs' argument that PURE's policy "fail[ed] to meet the[ir] reasonable expectations" because USAA's definitional exclusion did not appear on PURE's declaration sheet. Plaintiffs assert PURE's declaration sheet should have included the "follow form" provision and USAA's definitional exclusion.

While the declaration sheet is "the one page most likely to be read and understood by the insured," "an insurance contract is not per se ambiguous because its declarations sheet, definition section, and exclusion provisions are

A-1524-23

separately presented." Zacarias, 168 N.J. at 603. A rule requiring every definition and exclusion "to appear on the declaration page would result in even more fine print and 'run the risk of making insurance policies more difficult for the average insured to understand.'" Katchen v. Gov't Emps. Ins. Co., 457 N.J. Super. 600, 609 (App. Div. 2019) (quoting Morrison, 381 N.J. Super. at 540-41). "It would also eviscerate the rule that a clause should be read in the context of the entire policy." Ibid. (citing Zacarias, 168 N.J. Super. at 603).

Here, a person reading PURE's declaration sheet was advised the sheet merely "summarize[d] [the policyholder's] coverage and premium," and instructed the individual to "read [the] policy, any attached forms and endorsements and [the] [d]eclarations [sheet] for a full description of . . . coverage." PURE's declaration sheet further alerted the policyholder that excess coverage was subject to the provisions contained in the entire policy, including the stated exclusions to coverage.

On these facts, we are satisfied the motion judge properly dismissed plaintiffs' complaint after determining plaintiffs were not entitled to excess liability or UIM coverage under PURE's policy.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1524-23